THE STATE *ex rel.* LANE, *Collector,* v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant.*

Division Two, May 31, 1892.

1. School Taxes: LOCAL RATES: COUNTY COURT. Under Revised Statutes, 1889, section 7732, it is the duty of the county court to ascertain the average rate of taxation for school and building purposes from the official returns of the local school boards filed with the county clerk.

2. ———: ———: COUNTY CLERK. Where the county clerk fixes the rate, not from the official returns of the local school boards, but from information obtained by him from consultation with the school officers of the county, the tax levy is invalid.

3. Illegal Tax: ESTOPPEL. One is not estopped from denying the validity of a tax levy by having tendered the amount he supposed justly due.

4. School Taxes: RAILROAD BUILDINGS. A railroad company's buildings are subject to taxation like other property at the local rates fixed in the district where situated, and not at the average rate throughout the county.

*Appeal from Marion Circuit Court.*

REVERSED.

*J. D. Strong* for appellant.

The court committed reversible error in treating the so-called levy order of the county court, dated September 7, 1886, as compliance with the statutes in force, concerning levy of taxes on the property of railroad companies. This order was and is a nullity. Laws of 1885, pp. 230–1; R. 'S. 1879, secs. 6879, 6880; R. S. 1889, secs. 7731, 7732. (2) "Whatever is done by a court of record must appear by its record." *Folger v. Heidel*, 60 Mo. 286–7; R. S. 1889, sec. 3225; *Maupin v. Franklin Co.*, 67 Mo. 329. (3) The so-called order is an attempt by the county court to delegate to its clerk a power, which the statute devolves upon the county court, without the power of substitution. *City of Kansas .v. Railroad*, 81 Mo. 296. (4) "The tax must be levied by the tribunal to whom the power is delegated." Blackwell on Tax Titles [2 Ed.] 255; Dillon on Municipal Corporations [2 Ed.] 210. (5) "And only in strict conformity to the terms in which the power is granted." *State ex rel. v. Shortridge*, 56 Mo. 126; 81 Mo., *supra*, and cases cited therein. "Material departure is fatal." (6) The doctrine hinted at in declarations 2 and 3, that it is lawful to require the taxpayer to contribute to a "reservoir fund" beyond the known obligations of the public treasury, and which is to be idle in the treasury until some future year, is contrary to the universal idea of a tax. R. S. 1889, secs. 8017, 8018. The statute requires before a tax for any school purposes can be levied that a specific sum shall be appropriated to each specific purpose, and only such rates levied as shall be sufficient for that purpose, and to raise that specific amount. See sections heretofore cited. This is true of all kinds of taxes. "The levying of taxes is a matter solely of statutory creation." *Carondelet v. Picot*, 38 Mo. 125. "A

tax is not a debt, nor founded in contract; it operates *in invitum.*" Formerly the prevailing doctrine was that levy of any excess above the sum actually appropriated vitiated the entire levy. The later and more widely approved rule is that such levy is simply void as to the excess. *Taft v. Barrett*, 58 N. H. 447.

*John W. Boulware* for respondent.

THOMAS, J.—This is a suit by the collector of Marion county for sundry items of taxes of 1886, upon the property of defendant, assessed by the state board of equalization and apportioned to Marion county for taxation.

Prior to the institution of the suit, defendant tendered to the collector of the county the amount of taxes it claimed to be due, and after suit was brought deposited in court the amount thus tendered.

The trial was before the court without a jury, and resulted in a judgment against defendant for $563.90, from which it appeals.

The court found the issues for the defendant on all the items of taxes except school taxes. The evidence shows that the defendant's roadbed, rolling stock and movable property in Marion county were valued at $491,484.98, and its local buildings at $56,000. The county clerk extended on the tax book a tax at an average rate of thirty-two cents on the $100 valuation for school purposes on these two sums, making $1,751.94, and a tax on the same sums at an average rate of five and one-fourth cents on the $100 valuation for building purposes, making $287.42, and making a total of $2,039.36. The defendant tendered twenty-eight cents on the $100 valuation for school purposes and two cents on the $100 valuation for building purposes, on defendant's property, exclusive of the value

of the local buildings, the difference in the sum tendered and the sum levied being $563.90, the amount for which the court gave judgment on the final hearing.

On September 7, 1886, the county court of said county made an order, which recited that the clerk had submitted a summarized statement of the assessment of railroad property, as equalized and adjusted by the state board of equalization, as follows:

"Hannibal & St. Joseph railroad, $387,636.47; Hannibal & St. Joseph railroad (Palmyra branch), $159,848.51," and then continued as follows: "Which statement being seen and considered by the court, the clerk hereof is ordered to proceed at once to extend in the railroad tax book, upon the valuation as appears upon the certificate of said state board on said railroad property, and upon the local property thereof in said county, as returned by the assessor, the taxes for state, county, municipal, township, city, incorporated town and village and school purposes, and for the erection of public buildings, and for other purposes, as provided by law."

And it was in pursuance of this order alone that the clerk extended the school taxes on the tax book.

The evidence further shows that the clerk did not ascertain the average rate of the tax for school purposes and building purposes by adding together the local rates of the several school districts of the county as returned by the local school boards of such districts and by dividing the sum thus obtained by the whole number of districts levying a tax for school purposes and building purposes, but inquired what the needs of the respective districts were; and made up the average rate of taxation from information thus derived; and, taking the official returns made by the local school boards, it clearly appears that twenty-eight cents on the $100 valuation for school purposes, and two cents

for building purposes, were higher than the average rates. In other words, taking the official returns, it clearly appears that defendant paid more taxes into court than could have been legally levied.

Upon these facts the defendant asked the court, in substance, to hold that plaintiff could not recover a greater sum than that tendered, which the court refused to do but on its own motion gave, among others, the following declarations of law: "1. The court affirms the law to be that while the principles stated in defendant's declarations of law are, with one exception, abstractly correct, yet the defendant's tender and payment into court constitute a solemn admission of the validity of the proceedings imposing the taxes, on account of which said tender and payment into court are made, except so far as concerns the amount of the same kind of tax claimed in excess of amount so tendered and paid into court; and on the issue as to such taxes the defendant is confined to the question of exclusiveness.

"2. The court affirms the law to be that, while no legal authority can exist for the creation of a surplus tax fund, the law requires that the state shall not set to its citizens the example of defaulting in the payment of its just dues, and it is a public necessity that the funds produced by school taxation shall be sufficient, though no more than sufficient, to at all times honor overdue demands incurred in the administration of the educational department of the state government. To this extent an educational fund maintained in advance of prospective collections is not a surplus. The paramount object of revenue is to provide a fund which shall honor all matured demands, not by warrant, but in money, as soon as due. Any system which does not insure this result is, so far, a failure in civil government.

"3. The court affirms the law to be that the school government is entitled to maintain in the treasury in advance a reasonable provision as a reservoir to be applied to prevent the instructional government from becoming at any moment a delinquent debtor to employes and others; but an amount of such advance fund materially in excess of the proposed amount of the estimate for applicable tax for the ensuing year is, to the amount of such  excess, unreasonable, and to . such an extent should be abated by credit on ensuing years' estimates respectively.  On the other hand, any respective amount of such advance fund not materially in excess of the respective estimates for a school district for the ensuing year, is considered and adjudged not unreasonable.  The principle of such supply is inher-, ent in all governments.  It necessarily pervades all co-operative action.  Its model may be traced alike in the fall of the manna, and the oracle that invokes no more than the daily bread.

"4. In all revenue matters it is the ancient and revered rule and maxim of the law, that in a doubtful case the decision must be in favor of the government. It is, therefore, found that the respective amounts of school-tax fund on hand in the treasury to the credit of the respective school districts were and are in no case materially in excess of the estimates for the ensuing year, and that, under public necessity, said amounts were and are required to be maintained in advance to defray the necessary current expenses of maintaining the public schools, and upon such finding it is considered and adjudged that the plaintiff is entitled to recover the amount of the school taxes respectively sued for, with interest thereon, less the amount of such tax tendered and brought into court of date ——, 188-. Thereupon judgment is rendered for plaintiff against defendant for said unpaid school taxes and interest in

the duly assessed sum of —— dollars and —— cents, school taxes."·

I.   It is clear that the levy of the school tax on defendant's property in Marion county, for the year 1886, was illegal.   The statute is too plain for argument.   It provides that for the purpose of levying school taxes and taxes for the erection of public buildings on the roadbed, rolling stook and movable  property of railroads, the several county courts shall ascertain from the returns in the office of the county clerk by the local boards of the school districts in the several counties the average rate of taxation levied for school purposes, and the average rate for the erection of public buildings, by adding together the local rates and by dividing the sum thus obtained by the whole number of districts levying a tax, and shall cause to be charged to the railroad companies school taxes at such average rate on the proportionate value of railroad property in their several counties as certified by the state auditor.   Laws, 1885, p. 229, now R. S. 1889, sec. 7732.   The order of the county court in this case failed in all essential particulars to comply with these requirements.   It was the duty of the county court to ascertain the average rate of taxation for school purposes and building purposes from the official returns of the local school boards filed with the county clerk, and this duty it could not delegate to anyone, and the court should, in its order, have directed the clerk to extend the tax upon the average rate of taxation thus ascertained.   This it did not do.   The clerk, however, fixed the local rates of the school districts to meet what he supposed their necessities were, not by the official returns, but by information picked up by him from consultation with the school officers of the county. This course is indefensible.   *State ex rel. v. Railroad,* 87

Mo. 236; *State ex rel. v. Railroad*, 92 Mo. 136; *State ex rel. v. Railroad*, 97 Mo. 296.

II. But we take it from the instructions given that the trial court held that defendant, by its tender of the amount of taxes it supposed it justly owed, is estopped from denying the validity of the levy of the tax, and, because it was willing to pay part, it was bound to pay all, whether legal or illegal. This would punish the taxpayer for trying to do his duty in spite of the failure of the county court to levy taxes as required by law. The defendant took the proper course, and the very laudable course, too, to tender the sum really due, and to resist the payment of the excess above the legal rate of assessment. *Walker v. St. Louis*, 15 Mo. 563; *Westlake & Button v. St. Louis*, 77 Mo. 47.

III. The court also erred in holding defendant liable for taxes, for school purposes and building purposes on its local buildings, at the *average rate* throughout the county. The buildings of a railroad company are subject to taxation like other property at the local rates fixed in the districts where they are situated Sec. 7732, *supra..*

The defendant having paid into court more school taxes than it was equitably chargeable with, the judgment of the circuit court is reversed, and judgment will be entered here for defendant. All concur.