THE STATE *ex rel.* HAYES, *Appellant*, v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY.

In Banc, November 17, 1896.

1. **Taxation**: RAILROAD PROPERTY: STATUTE. The county court and other officers charged with the duty of levying taxes on a railroad company's distributable property act, not as judicial tribunals, but *in invitum*, and whether the taxes are levied in accordance with the statutory requirements is to be determined by an action in the circuit court as provided for in Revised Statutes, 1889, section 7682.

State ex rel. v. Hannibal & St. J. R. R. Co.

2. ———: ———: SCHOOL TAXES: COUNTY CLERK. The clerk of the county court has no authority to extend upon the tax books. without the order of the county court, the school tax upon the property of a railroad company, based upon school district clerks' certificates of the amount of taxes to be levied for school purposes.

3. ———: ———: ———: ERRONEOUS ASSESSMENT. Where a building is erroneously included in the taxation, for schools, of a railroad company's "roadbed, rolling stock, and movable property," under Revised Statutes, section 7732, the county can not recover the excess represented by the value of the buildings.

4. ———: ———: ———. That the average rate, at which property of a railroad company should be assessed for local school taxes, was fixed too low, can not be urged by the company as an objection against the tax.

5. ———: ———: ———. That the rate for each fund of the school tax was not separately found and levied, does not invalidate the levy of the aggregate tax on railroad property at the average rate of the school districts of the county.

6. ———: ———: ———. The estimates furnished by the school districts of the county *held* to have sufficiently fixed the rates from which to deduce an average rate for the taxation of railroad property for school purposes.

7. ———: ———: ———: SIDE TRACKS: STATUTE. The necessary lands upon which railroad side tracks are laid in its yard for the convenient and safe movement of cars, and for loading and unloading them, are assessable by the state board of equalization, and not by the local assessor, within the meaning of Revised Statutes, 1889, section 7728, which provides that the property of a railroad company subject to local assessment is "all property, real, personal, or mixed, including 'lands,' machine and work shops." (BRACE, C. J., dissenting).

8. ———: ———: ———: LOCAL ASSESSMENT. A portion of said yards having thereon only coal sheds, is subject to assessment by the local authorities.

9. Statute, Construction of. The practical construction given to a statute, of doubtful meaning, by state officers whose duty it is to act under it, while not conclusive, is entitled to weight.

*Appeal from Jackson Circuit Court.*—HON. C. L. DOBSON, Judge.

REVERSED AND REMANDED.

*H. M. Meriwether, Teasdale, Ingraham & Cowherd,* and *Marcy K. Brown* for appellant.

(1) The action of the county court in ascertaining the average rate of taxation for school purposes is not subject to collateral attack. *State ex rel. v. Railroad,* 116 Mo. 15; *State ex rel. v. Brassfield,* 113 Mo. 90. It may be reviewed by appeal. R. S. Mo. 1889, secs. 3318, 3434, 7658; *Colman v. Farrar,* 112 Mo. 72. It may also be reviewed by *certiorari. Halpin v. Powers,* 68 Mo. 320; *State ex rel. v. Dowling,* 50 Mo. 134. (2) In assessing defendant's local property the assessor acted judicially, and his assessment was not appealed from. It is not subject to review in this proceeding. Burrows on Taxation, pp. 238 and 245; Cooley on Taxation [2 Ed.], p. 750, and following; *Meyers v. Rosenblat,* 78 Mo. 495; *Dean v. Todd,* 22 Mo. 90; *State ex rel. v. Bank,* 120 Mo. 161; *Ins. Co. v. Charles,* 47 Mo. 466; R. S. 1889, sec. 7572; *Farmington v. Downing,* 30 Atl. Rep. (N. H.) 345; *Railroad v. Matthews,* 38 N. E. Rep. (Ill.) 623; *Jones v. Gas Co.,* 35 N. E. Rep. (Ind.) 390; *Railroad v. Devereux,* 41 Fed. Rep. 14. (3) The failure of several school boards to state clearly the amounts deemed necessary in their estimates was an immaterial variation. The requirements as contained in section 8000 are merely directory. *Railroad v. Gracy,* 28 S. W. Rep. 736. (4) The property of defendant described, assessed and taxed as local property, was local property, and subject to be taxed as such. R. S. 1889, secs. 7728, 7729; *State ex rel. v. Railroad,* 117 Mo. 1; *State ex rel. v. Railroad,* 114 Mo. 1; *State ex rel. v. Bridge Co.,* 109 Mo. 253; *Railroad v. Devereux,* 41 Fed. Rep. 14. (5) The Kansas City school levy was valid and sufficient authority to the county clerk to enter up the tax on the railroad tax book as a charge against the local property of defendant in said school district.

*Railroad v. Gracy*, 28 S. W. Rep. 736; R. S. 1889, secs. 8005, 8067 and 8094; *State ex rel. v. Railroad*, 113 Mo. 297; *In re Powers*, 52 Mo. 218; *School District v. Byars*, 67 Mo. 706; *State ex rel. v. Railroad*, 21 S. W. Rep. 14; *Robbins v. Barron*, 33 Mich. 124. (6) The uniting and blending of the rates for school purposes, building purposes and other purposes in obtaining the average rate of fifty-five cents, was a mere irregularity which did not increase the burden of defendant and would not invalidate the tax. *Railroad v. Gracy*, 28 S. W. Rep. 736; *Railroad v. County Court*, 50 N. W. Rep. 937; *Roackland v. Ulma*, 24 Atl. Rep. 949; *Thatcher v. People*, 79 Ill. 597; R. S. 1889, secs. 7708, 7563; *State ex rel. v. Railroad*, 113 Mo. 297. (7) Buildings on the right of way of a railroad are a part of the roadbed and are to be assessed by the state board and taxed for school purposes at the average rate. They are not local buildings. *State ex rel. v. Railroad*, 89 Mo. 98; R. S. 1889, sec. 7718. (8) The railroad tax book is not required by statute to have the rate at the head of each column. R. S. 1889, sec. 7733. (9) The relator was required to collect the whole amount of taxes charged against each tract of land, parcel or valuation, on the tax book. He could not receive less than the whole, and hence it was error to adjudge costs against him. R. S. 1889, sec. 7612; *Julien v. Ainsworth*, 24 Kan. 446.

*Spencer & Mosman* and *John D. Strong* for respondent.

(1) The trial court did not err in holding that appellant could not recover on account of school taxes charged against defendant's property at the average rate of fifty-five cents (55 cts.), for the reason that the railroad tax book was fatally defective and would not

authorize a judgment for the tax. "A statute is never regarded as directory merely, so that any of its provisions may be dispensed with, when the act required or the omission of it can by any possibility work advantage on one side or injury on the other, however slight, to anyone affected by it." 1 Desty on Taxation, pp. 555 and 558; *Lyon v. Alley*, 130 U. S. 185; *State v. Bank*, 120 Mo. 173; *Seymour v. Peters*, 67 Mich. 415; *Ferton v. Feller*, 33 Mich. 203; Cooley on Taxation [2 Ed.], pp. 353 and 420. (2) By the failure of the county clerk to comply with the command of the statute the tax against the defendant was increased largely over what it would have been, if based on the assessment returned by the state board. All statutes are mandatory which expressly or by implication limit the amount of taxes that may be levied. When these are exceeded by a sum which is spread upon the whole roll, the levy is void. *Boyce v. Sebring*, 66 Mich. 219; *Bailey v. Haywood*, 38 N. W. Rep. 209; *Lufkin v. City*, 11 S. W. Rep. 340; *Cooper v. Lumber Co.*, 31 S. W. Rep. 981; *Wager v. Booley*, 62 N. W. Rep. 293; *State v. Railroad*, 117 Mo. 12; *State v. Railroad*, 114 Mo. 11. (3) Any such unauthorized action on the part of the officers has always been held fatal to the tax. *Henry v. Bell*, 75 Mo. 197; *Railroad v. Cass Co.*, 53 Mo. 17; *Harris v. Brown*, 52 Mo. 306; *Warrensburg v. Miller*, 77 Mo. 56; *State v. Railroad*, 110 Mo. 271; *Railroad v. Apperson*, 97 Mo. 300; *Higgins v. Ausmus*, 77 Mo. 351. (4) The railroad tax book is by statute given the force and effect of an execution (sec. 7740), and as it did not follow the assessment, it was a nullity. Burroughs on Taxation, sec. 105, p. 256; *Railroad v. Apperson, supra; Warrensburg v. Miller, supra; Ewart v. Davis*, 76 Mo. 133; *Kinney v. Forsythe*, 96 Mo. 419; *Pike v. Martindale*, 91 Mo. 280; *Howard v. Heck*, 88 Mo. 461; *Holzhour v. Meer*, 59 Mo. 434. (5) The trial

court did not err in holding that appellant could not recover school taxes at the average rate, for the reason that the provisions of section 8005, Revised Statutes, 1889, had not been complied with. The taxpayers had not voted to authorize the levy of any such a rate of taxation. (6) The failure of the estimates to show the aggregate sum necessary to be raised in the district in order to maintain the schools for the year is fatal to the recovery of the average rate school tax. (7) The failure to find separately the average rate for "school purposes," for "building purposes," and for "other purposes," and the failure to charge the railroad company with taxes for each of said purposes separately at the average so found, avoids the tax. (8) Tracts number 9 and 10, were parcels of land arbitrarily cut by the city assessor out of the lands bought by the defendant and improved for track and depot purposes. These lands were the roadbed for the defendants main and side tracks, and the site of its depot and (except coal shed site) were not put to any other use. (9) The city assessor had no power to subdivide the ground; the statute gave him none. *People, etc., v. Co.*, 96 Ill. 369; *Gage v. Rumsey*, 73 Ill. 473; *Bedleman v. Brooks*, 28 Cal. 72; *Brown v. Hays*, 66 Pa. St. 235; *Reading v. Finney*, 73 Pa. St. 467. (10) If it were conceded that he had the power, still his action in this case is unauthorized, because his description included too much land. *Co. v. People*, 89 Ill. 464.

### DIVISION ONE.

BRACE, P. J.—This is an action by the collector of the revenue of Jackson county, for the recovery of taxes alleged to be due by the defendant for the year 1891. The taxes sued for are upon both the local and distributable property of the defendant. Before the taxes became delinquent the aggregate sum which the

defendant admitted to be properly leviable of its property was tendered to the collector, and, after suit brought, was deposited in court. The question at issue is upon the taxes which it refused to pay, for reasons stated as follows:

"1. The defendant refused to pay the local school tax of Kansas City district on its local property described in the petition as tracts 1, 2, 3, 4, 5, 6, 7, and 8, for the reason that no order of the county court was made levying the tax.

"2. The defendant also refused to pay school taxes at the average rate of fifty-five cents on the $100, claiming that it was in excess of the true average rate, and that the levy of the average rate was illegal.

"3. Defendant refused to pay the school tax at the average rate of fifty-five cents on its buildings valued at $12,550. And it contends that said buildings should only be taxed at the local district rate.

"4. It refused to pay all taxes on tracts 9 and 10 described in appellant's petition, for the reason that 'said tracts were in fact a part of the distributable property of the defendant, were reported by it to the state auditor, and the same were assessed by the state board of equalization. Defendant claims that they were not subject to assessment by the local assessor of Jackson county.'"

The trial court refused all the declarations of law asked for by both the plaintiff and the defendant, gave judgment for the defendant, adjudged the costs against the relator, and the plaintiff appeals.

1. Plaintiff contends that the action of the county court in ascertaining the average rate of taxation for school purposes upon defendant's distributable property and of said court and of the assessor in the assessment of defendant's local property is conclusive and not subject to attack in this action, and that the court

committed error in refusing to so declare, as asked in the instructions of the plaintiff; and in admitting evidence in support of such attack.

If this contention can be maintained we are relieved of the necessity of inquiring into most of the objections urged against the validity of the proceedings by which the contested taxes were attempted to be levied.

The argument to support this contention proceeds upon the idea that the county court in ascertaining the average rate of taxation for school purposes, and in levying these taxes, acts judicially as a court of record, and its determination therein is a judgment which is final and conclusive unless appealed from, and that the assessment of the local property by the assessor is also in some manner a judgment of a competent tribunal in a matter within its jurisdiction, which is also final and conclusive under the same circumstances, and upon the assumption that the defense in this action brought to enforce the collection of the taxes levied and assessed by these tribunals upon the property of the defendant is a collateral attack upon their final judgments.

This, we take it, is an entire misconception of the character of this action. It is admitted that the defendant is the owner of the property and that its valuation by the assessing authorities is correct. But the complaint is, that the taxes sued for were not levied upon that valuation, against the property of the defendant, in the manner required by law.

We think there can be no doubt that in levying the taxes in question the county court, and all other officers to whom power is given, and who are charged with duties in making such levy, proceed not as judicial tribunals, but *in invitum*, as the representatives of the taxing power of the government, the force and effect of whose action is declared by statute to be only *prima*

*facie* correct in an action brought for the collection of such taxes. R. S. 1889, sec. 7682.

These taxes to be valid charges against the property of the defendant must have been levied in accordance with the requirements of the statute. The tribunal provided by the statute for determining whether they were so levied is the circuit court, in an action such as this, in which the question to be tried is whether they were so levied. *Jones v. Driskill*, 94 Mo. 190; *Boyd v. Ellis*, 107 Mo. 400; *Smith v. Nelson*, 110 Mo. 552; *State ex rel. v. Railroad*, 117 Mo. 1.

The circuit court committed no error in making such inquiry, and we are not relieved of the necessity of determining whether that court decided correctly in sustaining the several objections, hereinbefore stated, made by the defendant to these taxes. These objections will be ruled upon in their order.

2. It seems to be conceded that the Kansas City school district is organized under the provisions of chapter 143, article 1, of the Revised Statutes.

It is provided by section 8000 of that chapter that "the school board of each district shall, on or before the fifteenth day of May of each year, forward to the county clerk an estimate of the amount of funds necessary to sustain the schools of their district for the time required by law, or, when a longer term has been ordered by the annual meeting, for the time thus decided upon, together with such other amount for purchasing site, erecting buildings, or meeting bonded indebtedness and interest on same, as may have been legally ordered in such estimate, stating clearly the amount deemed necessary for each fund, and the rate required to raise said amount;" and by section 8067 it is provided that "on the receipt of the estimates of the various districts, the county clerk shall proceed to assess the amount so returned on all taxable property,

real and personal, in said districts, as shown by the last annual assessment for state and county purposes * * * ."

In compliance with the requirements of this statute there was forwarded to the clerk of the county court the following certificate:

"TAX LEVY—5 MILLS.

"STATE OF MISSOURI, ⎫
                    ⎬ ss.
"County of Jackson. ⎭

"I, W. E. Benson, secretary of the board of directors of the school district of Kansas City, Jackson county, Missouri, do hereby certify that the following resolution levying the taxes of said district for the year 1891 was adopted by the said board at a meeting held on the seventh day of May, A. D. 1891, to wit:

"Be it resolved, that the school district of Kansas City, county of Jackson, and state of Missouri, does hereby for the year 1891 levy a tax of four (4) mills on the dollar valuation upon all property in the above described school district and all statements of merchants and manufacturers doing business in said district, for school purposes during the ensuing school year; and does also hereby levy a tax of nineteen-twentieths (19-20) of one mill on the dollar valuation on all property in the above described school district with the statements of merchants and manufacturers doing business in said district for the payment of interest becoming due upon the indebtedness of said district, during the ensuing school year; and also does hereby levy a tax of one-twentieth (1-20) of one mill on the dollar valuation of all property in the above described school district, together with the statement of merchants and manufacturers doing business in said district for the purpose of constituting a

sinking fund to be used in the redemption of outstanding bonds of the district.

"In testimony whereof, I hereunto set my hand and affix the seal of said school district, this twelfth day of May, A. D. 1891.

"W. E. BENSON, Secretary."

Upon the authority of this certificate the clerk without any order of the county court, extended upon the tax book the Kansas City school tax of five mills against defendant's local property described as tracts 1, 2, 3, 4, 5, 6, 7, 8, which is the subject of defendant's first objection. Plaintiff contends that this was a sufficient and valid levy of that tax.

For the purposes of the present contention it may be conceded, without so ruling, however, that by this action the school tax in question was sufficiently levied upon the property in said district other than railroad property. The real question still remains, was it so levied upon defendant's property, which is railroad property, the levy of taxes upon which is provided for specially by a general statute applicable alone to that particular class of property (R. S. 1889, sec. 7717, *et seq.*), substantial conformity to which must be the test of the validity of the levy of such taxes. R. S. 1889, sec. 7728; *State ex rel. v. Railroad*, 117 Mo. 1.

By that statute express power is given to the county court, and to the county court alone, to levy such taxes on railroad property, both local and distributable, and the manner is prescribed in which that power shall be exercised (secs. 7731, 7732), and until the county court has made such levy, the clerk has no power to extend such taxes upon the tax books against the property of the railroad company (sec. 7733). And so it has been expressly held in regard to municipal taxes, upon railroad property, which are authorized to be levied by the county court, by the same law,

in precisely the same terms. *Kansas City v. Railroad*, 81 Mo. 285. So also as to taxes for county purposes. *Railroad v. Apperson*, 97 Mo. 300.

It follows that the Kansas City local school tax sued for, not having been levied by the county court of Jackson county, the circuit court committed no error in refusing to sustain such tax.

3. The next tax objected to is the school tax, levied by the county court against defendant's property at the average rate of fifty-five cents, on which defendant tendered forty cents on the hundred dollars valuation. The valuation upon which this tax was levied was $34,425.79, being the amount of the valuation of defendant's property apportioned to Jackson county by the state board of equalization, and certified to the county court of said county by the state auditor, as the "total value of roadbed, and side tracks, rolling stock, and buildings on the right of way." The value of the buildings on the right of way included in this amount as certified to by the auditor was $12,550, leaving $21,875.79 as the valuation of the roadbed, rolling stock, and other movable property.

It is provided by section 7732 that "For the purpose of levying school taxes, * * * in the several counties of this state, on *the roadbed, rolling stock, and movable property* of railroads in this state, the several county courts shall ascertain from the returns in the office of the county clerk the average rate of taxation levied for school purposes, * * * by the several local school boards or authorities of the several school districts throughout the county. Such average rate for school purposes shall be ascertained by adding together the local rates of the several school districts in the county, and by dividing the sum thus obtained by the whole number of districts levying a tax for school purposes, and shall cause to be charged to said railroad compa-

nies taxes for school purposes at said average rate on the proportionate value of said railroad property so certified to the county court by the state auditor, * * * and the said clerk shall apportion the said taxes for school purposes, so levied and collected, among all the school districts in his county, in proportion to the enumeration returns of said districts;" *provided* "*that all lands, workshops, and warehouses, and other buildings* and personal property belonging to such railroad company lying in any school district, shall be taxed at the same rate as other property in such district, and the school taxes * * * thereon shall go to the district in which such *lands, depots, workshops, or buildings* are situate." The average rate for public buildings in the school districts is ascertained, and the taxes therefor levied and distributed in the same way by the provisions of the same section.

This statute seems to be susceptible of but one construction, and that is that the value of the roadbed and rolling stock and other movable property of the railroad company shall be taxed for school purposes at the average rate, and that tax be distributed to the several school districts of the county, and that the buildings on the right of way shall be taxed at the rate that other property is taxed in the district in which such buildings are situate, and that such tax shall go to such district. *State ex rel. v. Railroad*, 110 Mo. 265.

The value of the buildings on the defendant's right of way was therefore not subject to the average tax of fifty-five cents levied by the county court for school purposes. It was subject, however, to a tax of fifty cents on the hundred dollars, the local rate of the Kansas City school district in which the buildings were situated for the benefit of that district, but such tax was not levied.

It follows that the school taxes sued for at the

average rate were excessive to the amount of fifty-five cents on $12,550, and for this excess the plaintiff can not recover.

There are other objections urged against this tax.

*First.* That the true average rate when accurately made up from the returns of the several districts is fifty-seven cents instead of fifty-five cents on the hundred dollars valuation.

We do not see that the defendant has any ground to complain on this score.

*Second.* That the levy of the tax at the average rate was void because the rate for each fund was not separately found and levied as contemplated in section 7732.

This question was raised and maturely considered in the recent case of *St. Louis & S. F. R'y Co. v. Gracy*, 126 Mo. 472, in which we held that this was merely an irregularity that would not vitiate the levy.

By the same case another objection: i. e., the failure of the estimates to show the aggregate sum necessary to be raised in the districts, is also disposed of.

*Third.* It is next contended for defendant that the several estimates returned by the school districts did not authorize an average rate in excess of forty cents for the reason that said rates in excess were not fixed in the estimates of any of the school districts.

A common blank form was used by all the school districts and the point of this objection is best made manifest by one of them selected at random from the record, which is as follows:

### "ESTIMATE.

*"To the County Clerk of Jackson County, Missouri:*

"DEAR SIR: Please find herein an estimate of the amount of funds necessary to sustain the public school in District No. 3, Township No. 47, Range Nos. 29 and

30, for the period of 7 months, for the year beginning July 1, 1891.

| | Amount Levied | | |
|---|---|---|---|
| For Teacher's Fund, Sections 7979, 8005, 8007, and 8067............ | $450 | ........ | 50 Cts. per $100 |
| For Incidental Fund, Sections 7979, 8000, 8005, 8007, and 8067......... | $ 30 | .... . | 5 Cts. per $100 |
| For Building Fund, Sections 7979, 8000, 8006, 8007, and 8067......... .... | $...... | . ...... | . Cts. per $100 |
| For Sinking Fund, Section 7986......... | $...... | .... . | .. Cts. per $100 |
| For Annual Interest, Section 7987...... | $ ... | ...... | .. Cts. per $100 |
| Total ......... ............ | $480 | ........ | 55 Cts. per $100 |
| Estimated cash on hand July 1, 1891..... ...... ... ...... $15 | | | |
| Amount estimated from Public Funds......................$135 | $150 | ....... | |
| Amount to be levied on Taxable Property of the District........ .. .. | $330 | ........ | 55 Cts. per $100 |

"I hereby certify that at the annual meeting on the first Tuesday in April, 1891, it was ordered that school be held for the period of 7 months, and that the various amounts above specified were appropriated for sustaining and carrying on the same as follows:

"*First.* That a majority vote of those who are taxpayers, was given to increase the levy for 'School Purposes' to 55 cents on the $100 valuation, provided so much was needed to raise the above amounts for teachers and incidental fund, as provided for in section 8005.

"*Second.* That a separate vote was taken for 'Building Purposes,' and two thirds of all the qualified voters in the district voted in favor of a levy of .... cents on the $100 valuation to raise the above amounts, as provided for in section 8006.

"*Third.* That 'by order of the board' a levy of .... cents on the $100 valuation was authorized to raise above amount for 'Sinking Fund' to meet legal bonded indebtedness and .... cents on the $100 valu-

ation to liquidate accrued 'Interest' on same, as provided in sections 7986 and 7987.

"Done by order of the board this 5 day of May, 1891.                        "D. RAGSDALE,
                                        "District Clerk."

It is contended that this estimate does not fix a rate because of the use in the paragraph numbered *first*, of the words "provided so much was needed to raise the above amounts." But when the whole estimate is read together in connection with section 8005, to which the paragraph refers, this contention is answered.

By that section it is provided that, "whenever it shall become necessary, in the judgment of the board of directors of any school district, * * * to increase the annual rate of taxation for school purposes, * * * *such board shall determine the rate* of taxation," * * * and it is then provided that they shall "submit to the voters of said * * * school district, who are taxpayers * * * whether the rate of taxation shall be increased as proposed by said board."

It was the province of the board of directors to determine the rate of taxation necessary, and of the voters to sanction or reject the rate proposed by the board, and it sufficiently appears by this estimate certified by order of the board that they did fix the rate at fifty-five cents and that a majority of the voters voted in favor of an increase of the levy to that rate. Their vote in favor of the proposition could have no other effect than that of sanctioning and fixing the rate proposed by the board. So that there is nothing in the contention that estimates returned from the several school districts fixed no rate from which to deduce an average rate in the manner provided by the statute.

It follows from what has been said that the school tax at the average rate of fifty-five cents was properly chargeable on $21,875.79, the valuation certified by the

state auditor of defendant's distributable property, apportioned to Jackson county, and so much of that tax the plaintiff ought to recover.

4. This brings us to the taxes on the tracts of land 9 and 10 described in the petition levied in pursuance of an assessment by the local assessor. Defendant contends that it is not liable for any of these taxes for the reason that they were not subject to assessment by the local assessor, but were a part of its property which it was required to and did report to the state board of equalization for assessment, and which was by said board assessed, and the taxes levied against defendant's property therefor under such assessment. So that the question is whether these two tracts are to be deemed a part of the property assessed by the board pursuant to sections 7718 to 7727 inclusive, or whether they are local property within the meaning of sections 7728 and 7729 of the Revised Statutes (1889).

These two tracts are within the boundaries of the defendant's terminal yard at Kansas City, and are used for railroad purposes. Their situation and the uses to which they are subjected are shown by the following plat:

H & Sͭ Jo. R.R.

PART OF YARD AT KANSAS CITY,
VICINITY OF 12T͞H AND BLUFF STS.
MAY 12T͞H 1892.

N

S 45° W

#30'

#45'

COAL

SHOPS

SHOP

245'

FREIGHT DEPOT

C.R.I&P.R.R.

H&Sͭ JO.R.R.

PLATFORM

BLUFF ST.

F

G

117'

A ST.

E

B

TWELFTH

Number 9 is the triangular tract A B C on which is located a roundhouse, turntable, and the tracks leading thereto, and number 10 is the tract D E F G in the form of a parallellogram, on which there is nothing except some coal sheds.

The property of a railroad company subject to assessment by the state board of equalization is specified by section 7718 to be its road, so far as completed in this state, including double or side tracks, with depots, water tanks, and turntables, and its engines and cars of every kind and description including all palace or sleeping cars, passenger and freight cars, and all other movable property.    The property of a railroad company subject to local assessment is ''all property, real, personal, or mixed, including lands, machine and work shops, roundhouses, warehouses, and other buildings, goods, chattels, and office furniture, * * * not hereinbefore specified.''    Sec. 7728.    The comprehensive terms of this latter section include all property of a railroad company not included in the former.

The land in question belongs to the class of property included in section 7728, and is subject to local assessment unless it comes within the class of property specified in section 7718.    So that the main inquiry is what property is included within the terms of section 7718, the same being the distributable property of the company subject to assessment only by the state board of equalization.    In the solution of this question we can derive no assistance from the adjudications from other states and but little from those of our own state.    It must be determined in the main by the terms of the statute, with such light as may be shed upon the text by the history of the enactment.

The law initiating the present scheme for the assessment of railroad property in this state, was first enacted in 1871.    By that act, all the property of a

railroad company, "including the roadbed, buildings, machinery, engines, cars, lands, workshops, depot and all other property of whatsoever kind" was required to be assessed by the state board of equalization (Laws 1871, sec. 2, p. 56), and that board was required to apportion "the value of all *lands, workshops, depots and other buildings* belonging to each railroad company to the counties, cities, or incorporated towns in which such lands, workshops or depots and other buildings are situate, *and the aggregate value of all other property* of each railroad company shall be apportioned to each county, city, or incorporated town in which such road shall be located, according to the ratio which the number of miles of such road completed in such county shall bear to the whole length of such railroad." *Ib., sec. 8.*

In this first division of railroad property into two classes for the purposes of taxation, one of which may be called the local, and the other the distributable, property of the railroad, the local property is specified and taken out of the whole mass of the property to be assessed, and is defined to be "all *lands, workshops, depots and other buildings,*" leaving the distributable property as defined by the statute to be, "all other property of each railroad including roadbed, machinery, engines, cars, and all other property of whatsoever kind."

It is to be noted here, that while "*all lands*" and "the *roadbed*" are each to be reported to and assessed by the state board, "*all lands*" only, are required to be assessed as local property, thus inferentially leaving "the roadbed" to be assessed as distributable property. And we think it may further be conceded that the word "roadbed" was not here used in its restricted sense as meaning the mere foundation upon which the superstructure of ties, rails, etc., rests, but as meaning the road, including the roadway or right of way, with

the roadbed and its superstructure of ties, rails, etc., in place thereon, so that only "the lands" other than the right of way was to be assessed as local property. But by no possible construction could any land other than the right of way be included in the class of distributable property.

This act was superseded by a new act, amendatory only in its character, approved March 24, 1873 (Laws, 1873, p. 63), by section 2 of which act a more specific description of the railroad was required to be returned, but in which section 8 of the original act, directing the apportionment, was reenacted by a section of the same number, so that the classification remained the same under this as under the former act, unless, from the fact that the company was required in the act of 1873 in their return to " specifically describe all lands *including* the roadbed," it might be argued that the roadbed became local property as being within the term " all lands."

While such a conclusion might be drawn by a literal construction of the statute, we hardly think, in view of the former legislation, such was the intention of the legislature. Its terms, however, seem to emphasize the conclusion that no land other than the roadway was intended to be included in the class of distributable property in the legislation of the state up to this period.

This act was subsequently amended in 1875, but no change in the classification was made by that act. Laws 1875, p. 120, secs. 2 and 8.

Thus the law remained until 1877, and thus it appears, from the beginning up to that period, that the " roadbed," roadway, or right of way, or in other words, the road with its superstructure of rails, ties, etc., constituting it a railroad, together with its rolling stock, and other property moving or movable thereon,

was to be assessed by the mile as distributable property, while "all lands, workshops, depots, and other buildings" were to be assessed as local property, and all were assessable by the state board. And here it may be noted that the "workshops, depots, and other buildings" were to be assessed as local property, whether such buildings were on or off the right of way.

By an act approved May 2, 1877, a change was made in the mode of assessing the value of railroad property, whereby the distributable property only of the railroad companies was to be assessed by the state board, and the local property was to be assessed by the local assessors, and the former only was required to be returned to the state board. Laws 1877, p. 366.

The property to be assessed by the board is specified in section 1 of that act to be the road "including branch or leased roads, *  *  * double or side tracks," engines and cars of every kind and description including Pullman palace cars, owned, run, hired, or leased by them, and all rolling stock or other movable property of whatever kind. This property was to be valued and apportioned by the mile by the board (*Ib.*, sec. 2)—by the mile in length of the road with these tracks on it, and not by the mile in length of the tracks (*State ex rel. v. Stone*, 119 Mo. 668)—and by section 3, all property, real, personal, or mixed, not specified in section 1 was to be assessed under the general law by the county assessors. So that while the mode of assessment of local property and the authority to make it was changed by this amendment, the classification remained the same as before.

The act of 1873 and the acts aforesaid amendatory thereof were revised in 1879. By section 6866 of that revision the distributable property of the railroad required to be returned and assessed by the state board is specified to be "the road, *  *  * including

branch or leased roads,   *   *   *   double or side tracks, with depots, watertanks, and turntables,   *   *   * engines, and cars of every kind and description, including all palace or sleeping cars, passenger and freight cars, and all other movable property," and the local property by section 6876 is defined to be all property, real, personal, or mixed, including lands, machine and workshops, roundhouses, warehouses, and other buildings, goods, chattels, and office furniture of whatever kind, not specified in section 6866.

By the revision of 1889, sections 7718 and 7728, now under consideration, the same classification is maintained in precisely the same terms, except that "warehouses" is added to the description of local property. The only material change in the law made by that revision was that whereas under the original act and its amendments "depots, watertanks, and turntables" might, under the term "other buildings," have been assessed as "local property," these structures were in express terms placed by revision in the class of distributable property to be assessed as part of the roadbed, roadway, or road, and as they were to be so assessed, it would seem that only the "depots, watertanks, and turntables" on the road, roadbed, roadway, or right of way, were intended.

However that may be, and for the purposes of this case, a ruling thereupon is not necessary. It is evident that in making this change these structures only were in the mind of the legislature, and that by no possible construction could they be made to include any lands outside of the right of way. While under the statute the purposes for which a structure may be used may determine to which class the structure belongs, they do not determine to which class the land upon which the structure is erected belongs. *State ex rel. v. Railroad*, 117 Mo. 1.

Thus we see that while the side tracks, depots, watertanks and turntables of a railroad company are to be assessed with and as a part of its road or way, declared by the constitution, article 12, section 12, to be a public highway, and defined by the statute to be a way "not exceeding one hundred feet in width" on which its road is constructed (R. S. 1889, sec. 2543), and while it perhaps might be held that such side tracks, depots, watertanks, and turntables are to be so assessed whether on or off the right of way, there can be nothing found in the statute to warrant the assumption that any land held by a railroad company for any purpose outside of the right of way, is to be assessed as a part of it, and is therefore not subject to assessment as local property. On the contrary, it plainly appearing that all such lands are, under the statute, assessable as local property by the county assessor, and it seeming to be conceded and to appear from the plat given in evidence that tracts number 9 and 10 are outside defendant's right of way, they were subject to local assessment "under the general revenue laws of the state" (sec. 7728), and the only question that remains is, were they so assessed in accordance with the requirements of that law, by the assessor of Jackson county.

5. In order that such lands might be so assessed, the statute (sec. 7729) required a separate statement to be furnished to the county clerk for the benefit of the county, and other local assessors, specifically describing such lands, including machine and workshops, roundhouses, and other buildings, and other property not included in their return to the state auditor and clerk under sections 7718 and 7719.

As we have seen, while under those sections the turntable and the side tracks on tract number 9 *might* have been returned for assessment by the state board,

there was no authority in law for returning the lands upon which they were situate, and there could not have been any legal assessment of such lands by the board for the taxes in question.

But it is contended that as these lands were not included in the statement required by section 7729, the county assessor had no authority to assess them.

We see no ground upon which this contention can be maintained. The law says that these statements are to be returned for the benefit of the local assessors, and that the local property shall be assessed under the general revenue law as other local property is assessed. These statements or lists take the place of those which every other taxpayer is required to give of his property (R. S. 1889, sec. 7531), and, in case no list of any taxable property in a county shall be given to the assessor, he is authorized to make a list of such property for himself (sec. 7535), for the purposes of assessment. And as there is no evidence tending to show that these two tracts of land were not listed and assessed in like manner as the lands of other taxpayers of Jackson county under the same circumstances, and as there is no question that the taxes sued for were levied thereon as required by article 8, of the revenue act, we perceive no good reason why they should not be recovered in this action as provided by that act. It follows that the court erred in refusing to sustain these taxes.

For the errors indicated the judgment ought to be reversed and the cause remanded with directions to the circuit court to enter judgment for the plaintiffs for the taxes sued for, except such as are found in this opinion to be illegal. All concur in this opinion, except in paragraph numbered 4, treating of the taxes on tracts number 9 and 10, to which MACFARLANE and ROBINSON, JJ., dissent. The case is therefore transferred to the court *in banc.*

IN BANC.

MACFARLANE, J.—While acknowledging the force of the argument contained in paragraph 4 of the opinion of the learned chief justice, I am unable to give my assent to the conclusion therein reached, namely, that the necessary lands upon which side tracks are laid should be assessed, by the local assessor, and taxed as local property. What constitutes a side track is not defined by the statute, and I find nothing in the history of the legislation, or the development of the law, from which I am able to draw the conclusion that side tracks should be assessed separately from the land on which they are constructed.

The act of 1871 makes no mention of side tracks as a distinct item of property belonging to a railroad company. This property then must be included under one or another of the classes denominated "roadbed," "lands" or "all other property of whatsoever kind." Of the total property of a railroad company only the "value of all lands, workshops, depots, and other buildings" was apportioned to the counties, townships, and cities in which the road was located. From this initiatory law it is perfectly plain that the property of a railroad company known as "side tracks" was either regarded as distributable property, or it was included in the class of property termed "lands" by the statute. If included in the class denominated "lands," then it is also clear that the class "lands," as used in the statute, included side tracks located upon it. If side tracks were not included in the lands of a railroad then there was supposed to be a distinct class of property known as lands which was not occupied by the road or side tracks, and which the legislature intended to reach.

There is nothing in the subsequent legislation from

which we can fairly conclude that lands, which are, under the present law, to be assessed and taxed by the local authorities, include more or less than was intended under the laws of 1871.

The act of 1877, which is substantially the same as the present law, changes the phraseology in defining the distributable property. The act of 1871 required the assessment of all railroad property including the "road-bed" * * * "lands," etc. The act of 1877 requires the state board to assess "the road" * * * "side tracks," etc. The word "road" is substituted for "roadbed" of the original law, and "side track" is for the first time included as a specific item of railroad property.

Under the present law lands are still assessed and taxed locally. In this particular there is no change and we must conclude that side tracks were not included in the class of "lands" under the law of 1871.

The history of the state furnishes us with knowledge that large donations of land were made to certain railroads by the government, and also by individuals, much of which was still owned by them at the time the laws of 1871 and 1877 were passed, and we conclude that the lands required to be assessed locally were intended to include only those not in actual use by the railroad company in its public business.

With but little aid from legislation we are to determine whether side tracks, when not located on the right of way, include the land on which they are built within the intent and meaning of the statute.

The rule is that things personal in their nature may become a part of the realty, either by incorporating them with the realty, for some permanent object, or by affixing them to the realty, for any object, in such manner that they can not be severed without

dilapidation, or injury to the inheritance.    *Hunt v. Mullanphy,* 1 Mo. 508.

It seems to me, therefore, that merely naming "side tracks" as a distinct property, without other designation or definition, necessarily implies the land to which it is attached is to be included.    The ties and rails are attached to the land and a severance of them would destroy the side tracks.    Moreover, side tracks are built upon a bed of earth, generally filled up even with the rails; more care is in fact generally used in preparing the "bed" for side tracks than is used in preparing the roadbed of the road itself.

Again, it can not reasonably be assumed that the legislature intended that the ties, rails, and bed, which go to make up a side track, and which are comparatively of small value, should, for the purpose of taxation, be separated from the land, and the track and land assessed and taxed by different officers.    Generally speaking, the land is almost valueless without the track and the track without the land is only valuable in the worth of the rails and ties.

Under the present law, railroad companies are required to furnish the state board of equalization a statement, "setting out in detail the total length of their road, so far as completed, including branch and leased roads, the entire length in this state, and the length of double or side tracks," etc.    This statement contains the basis for the action of the board in making the assessment; and the items of property included in the statement make up the railroad or distributable property.    Sec. 7718.    All other property belonging to a railroad company "including lands" shall be assessed by the local assessors.

The laws of the state authorize a railroad corporation "to lay out its road, not exceeding 100 feet in width and construct the same" (sec. 2543) and "to

take and hold all necessary ground for depots and side tracks." Sec. 2563.

It is conceded that "the road," which is required to be assessed, includes what is generally denominated right of way, to the width of one hundred feet. There can be no doubt of this for the statute calls this right of way "the road." When the revenue law requires the road to be assessed by the state board it means the right of way and superstructure.

The statute does not declare what width of land shall constitute a side track, for much more may be required at one place than another, so it simply authorized a company to hold "all necessary ground" for side tracks. It seems to me that under this power the land for a side track is as much a part of the side track as the right of way is a part of the road. The latter is limited to one hundred feet and the former to what may be actually needed.

The statute of Illinois in distinguishing the property to be assessed by the state board uses the words "right of way" where our statute uses the word "road." In considering a similar question (in *Railroad v. People ex rel.*, 98 Ill. 357) the supreme court of that state comes to this conclusion: "We are, therefore, of the opinion that the land held and in actual use by a railroad company for side tracks, switches and turnouts, must be regarded, within the meaning of the revenue law, as a part of the right of way of the company. It is used in the transportation of freight, and also for the purpose of carrying passengers, alike with the land upon which the main track is constructed, and upon what principle the land upon which the main track is laid can be held to be right of way, and the land over which a side track, switch, or a turnout passes can be termed something else, we are at a loss to understand." Two of the seven judges did not concur "in all that is

said in defining what is here right of way." The opinion was approved in a subsequent case. *Railroad v. People ex rel.*, 129 Ill. 572.

This construction of the law is clearly implied under the decision in *State ex rel. v. Railroad,* 117 Mo. 7. A tract of land held by the railroad company for future use as a yard, but which was at the time leased to another, was assessed by the local assessor of St. Louis as local property. In a suit against the company for the taxes, the defendant insisted that, inasmuch as the land was bought and held for future use, as a yard, it should be and was assessed by the state board. In combating this contention of defendant, Judge BLACK uses this language: "And we think it is equally clear that section 6866" (now 7728) "does not include land which may have been purchased for future yard purposes, and which is in fact not used for such purposes at the time of the assessment." This language clearly implies, in the opinion of the writer, that if the land had been used for a yard it would not have been assessable by the local assessor.

But the taxing authorities have, at least since the act of 1877, in assessing and taxing railroad property, treated side tracks as including the necessary land upon which they are constructed. This will clearly appear from the journal of the state board and from the assessments of the local authorities.

The tracts of land under consideration were parts of a six acre tract used by defendant for a yard, and there is no claim by plaintiff that the local assessor had the right to assess the entire tract.

Reference to the journal of the board of equalization for 1895, page 28, will show this entry: "On motion the board proceeded to assess, adjust, and equalize the property belonging to the following railroad companies on the first day of June, 1894, and

having duly considered all the evidence in regard to the same, fixes the value of the roadbed, side track, *and superstructure* per mile as follows:'' Thus treating side track as including land and superstructure the same as the road.

This practical construction has been acted upon from the time the law of 1877 went into force.

While not conclusive upon the courts, the construction thus given to the law is entitled to much weight if there be doubt as to the meaning of the law. *Ross v. Railroad*, 111 Mo. 25; Endlich on Interpretations of Statutes, sec. 360.

Now, making practical application of this construction to the facts in this case: The local assessor had no power to assess the land of defendant which was used as a yard. The tracks in a yard may properly be termed side tracks, and include the ground necessary for the convenient and safe movement of cars and for loading and unloading them. But defendant had no right to lease out for private purposes a portion of the yard, and for taxing purposes still call it a part of the yard. *State ex rel. v. Railroad*, 117 Mo. 6.

The assessment of lot number 10 by the local authorities was therefore proper and is sustained, for the reason given by BRACE, C. J., in paragraph 5 of his opinion.

Tract number 9 is a part of defendant's yard and is used as such. The local assessor had no power to assess it. His assessment should have been of the roundhouse only.

From this opinion BRACE, C. J., dissents; all the other judges concur. The judgment therefore ought to be reversed and the cause remanded.

ON REHEARING.

PER CURIAM.—On rehearing *in banc* paragraphs numbered 1, 2, and 3 of the foregoing opinion of BRACE, P. J., in division number one, are concurred in by all the judges; in paragraph numbered 4, none concur, but instead all the judges, except BRACE, C. J., concur in the foregoing opinion of MACFARLANE, J., in regard to those taxes. The judgment of the circuit court is therefore reversed and the cause remanded to the circuit court with directions to enter judgment for plaintiff for the amount of taxes sued for except such as are found in these opinions to be illegal.