SOUTHWESTERN BELL TELEPHONE COMPANY, INC., and Union Electric Company, Inc., Plaintiffs/Appellants,

v.

Beth MAHN, Tax Collector of Jefferson County, Defendant/Respondent.

No. 70750.

Supreme Court of Missouri, En Banc.

March 14, 1989.

---

Francis X. Duda, Peter L. Clark, Ann E. Buckley, St. Louis, for plaintiffs/appellants.

John A. Schneider, Randall D. Sherman, Hillsboro, for defendant/respondent.

WELLIVER, Judge.

This is an appeal following the assessment and collection of ad valorem property taxes in the Hillsboro R–III School District (District). This appeal involves construction of a revenue law of the state of Missouri. We have exclusive jurisdiction. Mo. Const. art. V, § 3.

At issue here is whether § 164.021.2[1] prevents the District from using the $2.54 assessment rate for the 1986–1987 school year. The trial court upheld the imposition and collection of the taxes. We reverse the judgment of the trial court and remand the case for proceedings consistent with this opinion.

I.

The facts are undisputed. Southwestern Bell (Bell), and Union Electric (UE) are corporations duly authorized to do business in the state of Missouri. Both Bell and UE provide services in Jefferson County, Missouri. Beth Mahn was named in her capacity as the collector of revenue for Jefferson County, Missouri.

On June 11, 1986, the Hillsboro Board of Education (Board) held a special meeting to discuss the financial condition of the district involving a projected financial shortage during the 1986–87 school year. The Board voted to present a tax levy election for a 56¢ increase on every $100 assessed valuation. The election was scheduled for October, 1986.

On July 8, 1986, the District filed a public notice of the upcoming election and a proposed ballot. The question submitted to the voters was:

Shall the school board of Hillsboro R–III School District be authorized to increase the tax levy for general operating expenses by $0.56 on the one hundred dollars assessed valuation? If this proposition is approved by the voters, the total operating levy of the school district will be $2.54 per one hundred dollars of assessed valuation.

The district had also filed its Estimate of Required School Taxes, which is required by statute. § 164.011.2. The estimate listed a rate of $1.98 per $100 assessed valuation.

In the election, held October 7, 1986, the voters approved the 56¢ additional levy by a vote of 425 to 365. On October 14, 1986, the District filed an amended copy of its estimate, showing the new $2.54 per $100 assessed valuation. The County Clerk of Jefferson County used the $2.54 rate instead of the $1.98 rate in assessing the property taxes due for the school year 1986–87.

Bell paid under protest $261.99 on its locally assessed real estate and personal property located in the District and $8,214.37 on its distributable property.[2] UE paid under protest $105.28 on its locally assessed property and $48,688.33 on its distributable property. Both Bell and UE filed timely taxpayer statements of protest.

After filing separate suits in Jefferson County, Missouri, the suits were consolidated for trial. The trial court entered summary judgment against Bell and UE, and this appeal followed.

---

1. All references are to RSMo 1986, unless otherwise noted.

2. "Distributable" property is assessed state wide by the State Tax Commission and then apportioned to the count les through which the distributable property extends. §§ 153.030 and 151.060. It is taxed by each county for school tax purposes at the average rate of taxation for the school districts in the county. § 151.150. Only the $2.54 per $100 rate certified by the Hillsboro District is in issue here.

The trial court found § 164.011 to contain three separate filing requirements, one of which was met by the Notice of Election filed by the Board on July 8, 1986. The trial court further found § 67.110, which requires each political subdivision to "fix" its ad valorem property tax rate before September 1, had been met, and that the election of October 7, 1986, "related back" and ratified the $2.54 rate contained in the Notice of Election, relying on *State ex rel. Hayes v. Hannibal and St. J.R. Co.*, 135 Mo. 618, 37 S.W. 532 (1896).

Alternatively, the trial court found § 67.110 inapplicable to school districts because the District had fixed "some" rate prior to September 1. The trial court also alternatively ruled that § 67.110, which limits the tax rate to that necessary only to meet indebtedness on principle and interest of outstanding bonds if a rate has not been fixed prior to September 1, would conflict with Mo. Const. art. X, § 11(c). Art X, § 11(c) allows the last voter approved levy rate to continue if the board decides not to change the levy rate. The trial court also determined language from § 164.021 indicating when the higher rate would be effective following a favorable vote to be "directory", instead of "mandatory", relying on *Garzee v. Sauro*, 639 S.W.2d 830 (Mo. 1982).

## II.

The school district budget process has been described as an "inexact practice", due in part because neither revenues nor expenditures can be predicted with certainty. *Salisbury R–IV Sch. D. v. Westran R–I Sch. D.*, 686 S.W.2d 491, 496 (Mo.App. 1984). 2 Mo. Local Government Law, Section 16.18 describes the process as follows:

Each school district annually prepares an estimate of the tax rates needed to produce the necessary revenue in the various funds for the next fiscal year and forwards those estimates to the county clerk on or before July 15th. Section 164.011, RSMo.1986 ...

*Following the [tax rate] hearing and before July 15th, the board of education fixesits ad valorem property tax rates for the fiscal year and so notifies the county clerk: the district, however, may amend the filing on or before September 1st. Section 67.110. The county clerk proceeds to assess that rate against all taxable property in the district as of September 20th of that year. Section 164.041, RSMo 1986.* (emphasis added)

Section 164.021.2 provides:

2. If the necessary majority of the voters voting thereon, as required by article X, § 11(c), of the constitution, favor the proposed increase, the result of the vote, including the rate of taxation so voted, shall be certified by the clerk of the district to the clerk of the commission of the proper county or counties, who, on receipt thereof, shall assess the amount so certified, *effective as of September twentieth next following* against all taxable property of the school district as provided by law. (emphasis added)

Bell and UE argue § 164.021.2 prevents the District from using the higher rate for the 1986–87 school year. We agree.

Taxing statutes are read strictly against the taxing authority and in favor of the taxpayer. *Spudich v. Director of Revenue*, 745 S.W.2d 677, 680 (Mo. banc 1988). Where the statute is clear and unambiguous there is no room for construction. *Community Federal Savings and Loan Association v. Director of Revenue*, 752 S.W.2d 794 (Mo.banc 1988). Section 164.021.2 clearly requires the Clerk to certify the result of the vote and assess the new rate effective as of September twentieth following the vote. As applied to the facts of this case, the September twentieth involved when the new assessment would be effective would be September 20, 1987. We see no ambiguity in the language of the statute. To read the statute to permit assessment of the new rate effective September twentieth preceding the election would lead to an absurd result. Not only would it directly conflict with the statute as worded, but it would permit a discretionary decision as to apply the new rate *before* it has been approved by the voters. The duties of making the assessment and extending the

446

levy on county tax books is a ministerial duty, not a discretionary one. *State ex rel. School District No. 15, Pleasant Valley, Jackson County v. Conley,* 470 S.W.2d 170, 171 (1971).

Nor do we accept the "relation back" argument relying on *Hayes, supra.* In *Hayes,* the taxpayer contested the assessment based upon the use of the words "provided so much was needed to raise the above amounts ..." in the estimate filed with the County Clerk of Jackson County. *Id.,* 37 S.W. at 535. The allegation in *Hayes* went to the sufficiency of the estimate, not the effective date of the assessment which is at issue here. In fact, a reading of the estimate filed in *Hayes* would indicate the election had already been held. It read "[t]hat a majority vote of those who are taxpayers was given to increase the levy ...". *Id.* Granted, in *Hayes* the vote had the effect of "fixing" the rate, but this is no different from what happened here. The vote on October 7 ratified increasing the rate. What it did not do, however, was sanction the assessment of that rate to the 1986–87 school year by sanctioning the assessment *before* the election was held.

■ The trial court also determined the language of § 164.021.2 to be "directory" rather than "mandatory", relying on *Garzee, supra.* In *Garzee,* the court found the notice requirement in the Land Tax Collection Law to be mandatory, even though no penalty was prescribed for violations of the notice requirement. The Court balanced the absence of a penalty provision against the characteristics of proper notice found in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The holding of *Garzee* indicates that the presence of a penalty is but one method of determining the nature of a statutory phrase not containing a penalty provision. The absence of a penalty provision does not automatically override other considerations.

The judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

BILLINGS, C.J., and BLACKMAR, ROBERTSON, HIGGINS and COVINGTON, JJ., concur.

RENDLEN, J., concurs in result.