

# Missouri Court of Appeals
## Southern District
### Division Two

FOWLER LAND COMPANY, INC.,                )
and MARGARET LEIST REVOCABLE     )
TRUST, SANDY RUNNELS and             )
LINDA HENDERSON, Trustees,            )
                                                              )
    Petitioners-Appellants,              )
                                                              )
vs.                                                           )     No. SD33166
                                                              )
MISSOURI DEPARTMENT OF             )     Filed May 6, 2015
NATURAL RESOURCES, MISSOURI    )
LAND RECLAMATION PROGRAM,       )
ALTERNATE FUELS, INC.,                   )
CONTINENTAL INSURANCE               )
COMPANY, and CONTINENTAL           )
CASUALTY COMPANY,                        )
                                                              )
    Respondents-Respondents.            )

### APPEAL FROM THE CIRCUIT COURT OF BARTON COUNTY

Honorable James R. Bickel, Circuit Judge

### REVERSED AND REMANDED WITH DIRECTIONS

Fowler Land Company, Inc., and the Margaret Leist Revocable Trust (individually

"Fowler" and "Leist," respectively, and collectively "property owners") appeal the trial court's

judgment affirming the decision of the Missouri Land Reclamation Commission ("Commission")

upholding the approval by the Missouri Department of Natural Resources Land Reclamation

Program ("Program") of Alternate Fuels, Inc.'s ("AFI") application filed in 2011 to revise Permit

1

No. 1991-02 ("2011 Permit Revision").  Property owners claim the Commission had no legal authority to uphold the 2011 Permit Revision without their consent to the creation of the water impoundments envisioned by the permit revision and that they never gave such consent.  Finding that the Commission ignored and failed to apply and follow 10 CSR § 40-6.060(4)(E).5, which requires property owners' consent for the creation of such water impoundments, we reverse the Commission's decision and remand with directions to deny AFI's application for the 2011 Permit Revision.

### Factual and Procedural Background

The Commission is a Missouri instrumentality or agency created and domiciled for administrative purposes with the Department of Natural Resources.  Section 444.520.[1]  It is authorized to administer and enforce the Missouri Surface Coal Mining Law, sections 444.800 to 444.970 and its implementing regulations ("Missouri SCML"), as well as the orders and permits issued under that law.

The Program is a Missouri governmental instrumentality or agency, which under the supervision of its director and the Commission, implements the Missouri SCML on behalf of the Commission.

AFI is a coal mining company and is now a debtor pursuant to Title 11 U.S.C. Chapter 11, and Christopher Redmond ("Trustee") is its duly appointed trustee in bankruptcy.[2]  AFI previously mined coal in Barton County under Permit No. 1991-02 ("Original Permit" or "1991 Permit") issued by Program under the Missouri SCML, which authorized coal mining in a

---

[1] All statutory references are to RSMo 2000, unless otherwise indicated.
[2] Differentiating between AFI and Trustee is not critical or necessary to the resolution of the issues in this appeal. For clarity and continuity of thought, therefore, this opinion will refer to AFI even when those actions were taken by Trustee following AFI becoming a debtor in bankruptcy.

permitted area that included, among others, property owners' land. Property owners leased their land to AFI for the purpose of allowing mining to occur.

As part of its application for the Original Permit, 10 CSR § 40-6.050(10) required AFI to submit a reclamation plan that contained a detailed description of the proposed land use following reclamation of the land within the proposed permit area, including a description of any land use different from the pre-mining land uses and the information necessary to approve an alternative post-mining land use under 10 CSR § 40-3.130. The Original Permit included a reclamation plan prescribing each aspect of the reclamation required of AFI with respect to property owners' land, as required by the Missouri SCML. Continental Insurance Company and Continental Casualty Company (collectively "Continental") acted as one of AFI's sureties for reclamation under the Original Permit and its reclamation plan.

The pre-mining land use of Fowler's land consisted of 15 acres of prime farmland, 55 acres of cropland, 15 acres of pasture, and 25 acres of undeveloped land. The Original Permit provided for post-mining land use of Fowler's land as follows: 15 acres of prime cropland, 69 acres of pasture, 11 acres of water, and 15 acres of wildlife habitat. During the application process, Fowler consented to the permanent establishment of an 11-acre water impoundment in the center of the western portion of the Fowler land. This was the only final water impoundment on Fowler's land approved by the Original Permit.

The pre-mining land use of Leist's land subject to the Original Permit consisted of 95 acres of pasture land and 41 acres of undeveloped pre-mined land (with 2 acres of water included in the 41 acres of undeveloped pre-mined land). The Original Permit provides for post-mining usage of the Leist land as follows: 90 acres pasture, 41 acres of pasture pre-mined land (containing approximately 1/3 acre of water), and 5 acres of wildlife habitat.

3

AFI conducted mining operations under the Original Permit from approximately March 1993 to late 1996. In mining the permitted area and as a result of its unpermitted and unauthorized change in mining methods, AFI constructed, without Fowler's consent, four water impoundments either partially or wholly located on Fowler's land. These impoundments are identified as FWI 6-7 (8.8 acres),[3] FWI-8 (2.3 acres), Pond No. 4 (1.9 acres), and Pond No. 5 (2.4 acres). Ponds Nos. 4 and 5 are generally located in the area in which the single 11-acre water impoundment was to be located as authorized by the Original Permit, but FWI 6-7 and FWI-8 are not. The total post-mining result is that AFI created 15.4 acres of water on the Fowler land in four different water impoundments of which only 4.3 acres, in two separate ponds, is located within the single 11-acre water impoundment area authorized in the Original Permit.

AFI's unauthorized change in mining methods also created, without Leist's consent, two water impoundments either partially or wholly located on Leist's land, identified as Pond No. 001 (1.7 acres) and FWI-4 (4 acres), for a total of 5.7 acres of water. The Original Permit authorized and contemplated only a one-half-acre water impoundment on Leist's land in the location of Pond 001.[4]

The Program initiated formal enforcement actions against AFI in response to AFI's construction of each of these six unauthorized water impoundments, as well as other permit violations.[5] In 1995, AFI submitted a proposed permit revision ("1995 Permit Revision") requesting a change in its reclamation plan to reflect the change in the nature and direction of its mining operations, which would result in a change in post-mining land uses. In its 1995 Permit

_____

[3] Acreages shown in parentheticals following the identifier for each water impoundment indicate the number of acres the water impoundment covers on just Fowler's land and Leist's land, respectively.

[4] The record sometimes refers to the size of this water impoundment as one-third of an acre and sometimes as one-half of an acre. The difference, however, is immaterial to the resolution of any issue in this appeal.

[5] For an explanation of the enforcement process, *see* ***State ex rel. Nixon v. Alternate Fuels, Inc.***, 181 S.W.3d 177, 179 (Mo.App. 2005).

Revision application, AFI sought to revise the Original Permit to leave in place the six water impoundments presently located on property owners' land as permanent water impoundments. The Commission attempted to work with AFI to approve the 1995 Permit Revision and engaged in numerous rounds of comments, as well as enforcement actions, for several years. In December 2002, the Program denied AFI's 1995 Permit Revision because AFI had not obtained property owners' consent to the creation of the water impoundments. This denial was not appealed.

In June 2011, AFI filed a second application for a revision of the Original Permit ("2011 Permit Revision"). In its application, AFI claimed that the Commission exceeded its authority when it denied AFI's 1995 permit revision request because AFI could not obtain property owners' consent for the six permanent water impoundments as they existed post-mining.

Relying upon 10 CSR § 40-3.130(3) and 10 CSR § 40-6.070(4)-(5), the Program provided an opportunity to consult with the property owners, Fowler and Leist, and at their request an informal conference was held on September 29, 2011. Property owners did not appear in person, but relied upon written comments to the proposed 2011 Permit Revision submitted through their counsel. In those comments objecting to the proposed permit revision, property owners asserted, among other things, that

> 10 CSR 40-6.060(4)(E).5, specifically applicable to revision of permits, provides, in relevant part, as follows:
>
>> Issuance of Permit. A permit for the mining and reclamation of prime farmland may be granted by the director if s/he first finds, in writing, upon the basis of a complete application, that… [t]he aggregate total prime farmland acreage has not decreased from that which existed prior to mining. **Water bodies, if any, to be constructed during mining and reclamation operations must be located within the post-reclamation nonprime farmland portions of the permit area. The creation of any such water bodies must be approved by the regulatory authority and the consent of all affected property owners within the permit area must be obtained.**

5

Property owners also alleged that neither Fowler nor Leist had given consent for the creation of the six unauthorized water impoundments. And, specifically in reference to 10 CSR § 40-6.060(4)(E).5, property owners reminded the Program that it "is bound to the terms of its own rules and regulations and cannot ignore or violate them."

On December 2, 2011, the Program director ("Director") approved the 2011 Permit Revision, finding that AFI's application complied with all of the requirements of 10 CSR § 40-6.090(4) and 10 CSR § 40-3.130(3). At the same time, Director responded in writing to property owners' comments objecting to the proposed permit revision. In regard to 10 CSR § 40-6.060(4)(E).5, Director stated, *in toto*:

> The [property owners] also cite to 10 CSR 40-6.060( 4)(E).5 in support of their argument. This regulation contains requirements applicable to permit applicants who intend to reclaim prime farmland to the postmining land use of cropland. This authority is found at 10 CSR 40-6.060(4)(B) and (E). It provides that as part of the issuance of a permit "the creation of [water bodies within the post-reclamation nonprime farmland portions] must be approved by the regulatory authority and the consent of all affected property owners within the permit area must be obtained." Ms. Leist did not have any prime farmland on her property prior to mining, so this regulation does not apply to her. The Fowler Land Company had 15 acres of prime farmland, but this acreage amount will not change as a result of the proposed permit revision. Consequently, the regulation at 10 CSR 40-6.060 does not apply here.
>
> Even if this regulation did apply, it is clear from Program files that at the time of the issuance of Permit No. 1991-02, [Fowler] approved the creation of 10 acres of water impoundments on the Fowler property. A 1995 affidavit signed by Fowler approved 11 acres of water to be left on the property as part of the reclamation. Margaret Leist specifically approved no less than 5 acres of water impoundment to be created on her property in 1993. In a September 22, 1995 affidavit, she approved 4 acres for water. The proposed permit revision will result in 15.4 acres of water impoundment on the Fowler property and 5.7 acres of water impoundment on the Leist property. This results in a difference of less than 6 acres from the originally approved acreages for water impoundments for both landowners.
>
> In accordance with the provisions of 10 CSR § 40-6.080(1)(A), property owners timely

filed an appeal to the Commission of the Program's decision approving the 2011 Permit

6

Revision. In its complaint on appeal, property owners expressly challenged Director's "finding that the increase in acreage and the change in location of the water impoundments does not violate . . . 10 CSR 40-6.060(4)(E).5." In their answers to property owners' complaint, the Program, AFI, and Continental admitted that the Program "concluded in the Director's Findings that the current permit revision applications are consistent with . . . 10 CSR 40-6.060(4)(E).5[,]" and specifically denied that this regulation required "landowner consent for the permit revisions at issue in this case."

In its written decision, the Commission upheld the Program's approval of the 2011 Permit Revision. Without any mention of 10 CSR § 40-6.060(4)(E).5 or any of its provisions in its decision, but rather expressly relying only upon 10 CSR § 40-3.130(3),[6] the Commission held that

> The regulatory requirement that [Program] consult with the landowner does not mean that [Program] must obtain the landowner's consent before it can approve a permit revision. The Commission finds the [sic] AFI met each of the requirements set forth in 10 CSR 40-6.130(3) [sic] and more specifically, the Commission finds that AFI [sic] adequately consulted with the landowners before

---

[6] Quoted by the Commission in its decision, 10 CSR § 40-3.130(3) provides:

> (3) Criteria for Alternative Postmining Land Uses. <u>Higher or better uses</u> may be approved by the regulatory authority as alternative postmining land uses *after consultation with the landowner* or the land management agency having jurisdiction over the lands, if the proposed uses meet the following criteria:
>     (A) There is a reasonable likelihood for achievement of the use;
>     (B) The use does not present any actual or probable hazard to public health or safety, or threat of water diminution or pollution;
>     (C) The use will not—
>         1. Be impractical or unreasonable;
>         2. Be inconsistent with applicable land use policies or plans;
>         3. Involve unreasonable delay in implementation; or
>         4. Cause or contribute to violation or federal, state or local law.

(Italicized emphasis added by Commission in its decision and underlined emphasis added by this Court). The Commission's decision did not address or discuss in any respect whether or how any of the post-mining water impoundments authorized by the 2011 Permit Revision were "higher or better uses" than the pre-mining land uses recognized in the Original Permit. During oral argument, the Commission's and AFI's counsels were unable to direct us to any regulation, and we have found none, that establishes a hierarchy of land uses upon which to make a determination as whether one particular use is "higher or better" than another particular use.

7

approving AFI's application for the 2011 Permit Revision.  The Commission, therefore, upholds [Program's] decision to approve the 2011 Permit Revision because it was reasonable, based on substantial and competent evidence, and not arbitrary and capricious.[7]

Property owners timely filed a petition for review of the Commission's decision in the Circuit Court of Barton County.  In their petition, property owners alleged that the Commission's decision was unlawful in that the Commission ignored 10 CSR § 40-6.060(4)(E).5, its own regulation.  The trial court entered its judgment affirming the Commission's decision, and property owners timely appealed.

## Applicable Legal Principles

Upon appeal of an administrative decision, we review the decision of the administrative agency rather than the decision of the circuit court. *Klein v. Mo. Dep't of Health & Senior Servs.*, 226 S.W.3d 162, 164 (Mo. banc 2007).  "When the agency's decision involves a question of law, the Court reviews the question de novo." *Stone v. Mo. Dep't of Health & Senior Servs.*, 350 S.W.3d 14, 20 (Mo. banc 2011).

"Rules duly promulgated pursuant to properly delegated authority have the force and effect of law and are binding on the agency adopting them." *State ex rel. Stewart v. Civil Serv. Comm'n of City of St. Louis*, 120 S.W.3d 279, 287 (Mo.App. 2003) (citing *Martin-Erb v. Mo. Comm'n on Human Rights,* 77 S.W.3d 600, 607 (Mo. banc 2002)).  Accordingly, a court can compel an agency to follow its own rules. *State ex rel. Stewart*, 120 S.W.3d at 287.  "'Once an agency exercises its discretion and creates the procedural rules under which it desires to have its actions judged, the agency denies itself the right to violate those rules.'" *Id.* (quoting *Martin-*

---

[7] After initially referencing and quoting 10 CSR § 40-3.130(3) in this section of its decision, the Commission then twice refers and cites to 10 CSR 40-6.130(3) (emphasis added).  Because no 10 CSR § 40-6.130 exists, we conclude that in the context of this section of its decision, such references and citations were typographical errors and were intended by the Commission as a reference and citation to 10 CSR § 40-3.130(3).  Similarly, in the quoted paragraph from this section, the Commission refers to "AFI" as having consulted with the landowners.  In its findings of fact earlier in its decision, however, the Commission found that the "Program" had consulted with the landowners.

*Erb,* 77 S.W.3d at 608 n.6). "'Administrative agencies, just as the general public, are bound by the terms of rules promulgated by them.'" *State ex rel. Stewart*, 120 S.W.3d at 287 (quoting *Kabir v. Dep't. of Social Servs.,* 782 S.W.2d 706, 708 (Mo.App. 1989)).

### Discussion

Property owners raise eight points on appeal. In their third point, they contend, among other reasons, that the Commission misapplied the law by ignoring its "own regulation under 10 CSR § 40-6.060(4)(E).5."[8] We agree. Because the resolution of this point is dispositive of the appeal, we need not reach or address any other points.

The parties stipulated to the Commission and it found that property owners never gave their consent to the creation of the six water impoundments in the sizes, locations, or configurations as proposed by AFI in its application for the 2011 Permit Revision. The Program recognized and acknowledged this lack of consent when it relied upon it in 2002 as the basis to deny AFI's application for the 1995 Permit Revision, which involved the same six water impoundments. The legal issue before the Commission, therefore, in order to determine the propriety of the Program's approval of the 2011 Permit revision, was whether property owners' consent was legally required, as maintained by the Program in denying the 1995 Permit Revision, or not legally required, as maintained by the Program in approving the 2011 Permit Revision.[9] Without any mention or discussion of 10 CSR § 40-6.060(4)(E).5, as raised by

---

[8] No respondent mentioned or otherwise addressed this regulation in its responding brief. Although a respondent is not required to file a brief, and therefore, not required to respond to any issue raised by an appellant and suffers no penalty for failing to do so, we are left to adjudicate property owners' point without the benefit of whatever argument might have been raised. *Erskine v. Dir. of Revenue*, 428 S.W.3d 789, 790 n.1 (Mo. App. 2014).

[9] "Within the context of the landowner consultation issue," the Commission found a 2008 Cole County Circuit Court judgment to be "persuasive authority" supporting its decision that property owners' consent to the creation of the six water impoundments at issue was not required for the approval of the 2011 Permit Revision. This circuit court judgment arose out of AFI's appeal of the Commission's 2004 decision to revoke its permits, including the Original Permit, and forfeit the bonds securing those permits. Property owners were not parties to this action. In its judgment, the circuit court found:

9

property owners in their complaint for review, the Commission decided that property owners' consent was not required and that the Program was only required under 10 CSR § 40-3.130(3) to consult with property owners before approving the 2011 Permit Revision. This decision failed to address and ignored the express, clear, and plain language of 10 CSR § 40-6.060(4)(E).5.[10]

The Commission's regulations are codified in ten chapters under Division 40 of Title 10 of the Code of State Regulations. Chapter 6 addresses "Permitting Requirements for Surface . . . Coal Mining and Reclamation Operations." This chapter applies to permit revisions as well as to the original issuance of a permit. 10 CSR § 40-6.090(4); *see* section 444.840. AFI, as the applicant for a permit revision, had the burden of establishing that its application was in compliance with all the requirements of the regulatory program. 10 CSR § 40-6.090(4)(E).

Section 60 of Chapter 6 is directed toward "Requirements for Permits for Special Categories of Surface Coal Mining and Reclamation Operations." 10 CSR § 40-6.060. Subsection (4) of that section regulates the special category entitled "Prime Farmlands." As

> There was a good faith effort on the part of AFI and others on its behalf to comply with the Surface Coal Mining Law and the supporting Regulations and rules. The evidence does not demonstrate any willful violations or unwarranted failures to comply with the Surface Coal Mining Law and Regulations.

Based upon these findings, the Cole County Circuit Court held that AFI had sufficiently shown cause why its permits should not be revoked. The circuit court partially premised these findings upon its legal conclusion, without any analysis of the Commission's regulations, that the Program exceeded its authority in denying the 1995 Permit Revision for lack of property owners' consent because "there is no statute or regulation authorizing this requirement." This judgment was not appealed. The circuit court's failure to support this legal conclusion with any legal analysis of the Commission's regulations, especially the permitting requirements of 10 CSR §§ 40-6.010--.120 and the express landowner consent provisions of 10 CSR § 40-6.060(4)(E).5, as fully discussed *infra*, deprives its judgment of any persuasiveness in this Court.

[10] In addition to raising and maintaining the applicability of 10 CSR 40-6.060(4)(E).5 at each step in the administrative and judicial review processes, property owners have similarly raised and maintained that landowner consent is required for the creation of all water impoundments because such impounds do not maintain the approximate original contour of the land as required by section 444.855.2. While the Commission's decision ignored the former issue, it expressly addressed the latter issue, holding that the 2011 Permit Revision "returns the permitted land to its approximate original contour." Property owners also challenge this holding in their third point in this appeal. We need not reach or decide this larger issue and its applicability to the creation of all water impoundments because of our holding, *infra*, that 10 CSR § 40-6.060(4)(E).5 applies to the creation of the six water impoundments at issue here due to the existence of prime farmland within the permit area, thereby requiring property owners' consent to their creation regardless of whether they changed the approximate original contour of the land.

10

relevant here, "[f]or purposes of this section . . . revision of the permit shall mean a decision by the regulatory authority to allow changes in the method of mining operations *within the original permit area*[.]" 10 CSR § 40-6.060(4)(A).1 (emphasis added). According to AFI's application, the proposed 2011 Permit Revision sought the approval for changes in the method of mining operations within the original permit area that resulted in the creation of the six water impoundments at issue. As to the scope of section 60, it "applies to any person who conducts or intends to conduct surface coal mining and reclamation operations on prime farmlands historically used for cropland." 10 CSR § 40-6.060(4)(B). AFI falls within this scope because it intended to and did conduct surface coal mining and reclamation operations on prime farmlands in the permitted area under both the Original Permit and as alleged in its application for the 2011 Permit Revision. For those falling within its scope, this section has additional requirements for "[a]ll permit applications *for areas in which prime farmland has been identified within the proposed permit area*." 10 CSR § 40-6.060(4)(C) (emphasis added). Also, "[b]efore any permit is used *for areas that include prime farmland*[,]" Director is required to consult with the state conservationist. 10 CSR § 40-6.060(4)(D).4 (emphasis added). Finally, subsection E of section 60 provides, in relevant part:

> Issuance of Permit. A permit for the mining and reclamation of prime farmland may be granted by the director if s/he first finds, in writing, upon the basis of a complete application, that—
>
> > ****
>
> > 5. The aggregate total prime farmland acreage has not decreased from that which existed prior to mining. *Water bodies*, if any, to be constructed during mining and reclamation operations must be located within the post-reclamation nonprime farmland portions of the *permit area*. The creation of any such water bodies must be approved by the regulatory authority and the *consent* of all affected property owners *within the permit area* must be obtained.

10 CSR § 40-6.060(4)(E).5 (emphasis added).

The Commission has defined "permit area" as meaning "the area of land indicated on the approved map submitted by the operator with his/her application, which area of land shall be covered by the operator's bond and shall be readily identifiable by appropriate markers on the site[.]" 10 CSR § 40-8.010(1)(A).66. It is uncontested here that the six water impoundments at issue are on property owners' lands located within the permit area of the Original Permit and AFI's application for the 2011 Permit Revision.

The Commission has also defined "impoundment" as meaning "all water . . . holding structures and depressions, either naturally formed or artificially built." 10 CSR § 40-8.010(1)(A).49. The Commission has not, however, defined a water body. In the absence of a regulatory definition, we turn to the ordinary meaning of the word "body." *See* **Natural Res., Inc. v. Mo. Highway & Transp. Comm'n**, 107 S.W.3d 451, 453 (Mo. App. 2003) (ordinary meaning of a word is usually derived from the dictionary when a word used in a regulation is not defined therein). The dictionary definition of the noun form for "body" is "a mass of matter distinct from other masses <a ~ of water>[.]" MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 11th edition (2005). Comparing the regulatory definition of "impoundment" with the ordinary dictionary definition of "body," a water impoundment describes the structure holding a distinct mass of water, which is a water body. The six water impoundments at issue here, therefore, hold "water bodies" as that term is used in 10 CSR § 40-6.060(4)(E).5.

Moreover, these six water bodies were "constructed during mining . . . operations" and are all "located within the post-reclamation *nonprime* farmland portions of the permit area," as regulated and required by 10 CSR § 40-6.060(4)(E).5.[11] (Emphasis added). As such, their

---

[11] The requirement that water bodies be located "within the post-reclamation *nonprime* farmland portions of the permit area," (emphasis added) expressly refutes any notion that 10 CSR § 40-6.060 only applies to prime farmland, as advanced by Director in his response to property owners' objections to AFI's application for the 2011 Permit Revision. By reserving certain uses to "nonprime farmland" portions of the permit area, this section logically and

12

creation required not only Program approval, but also required that "the consent of all affected property owners within the permit area must be obtained." 10 CSR § 40-6.060(4)(E).5. AFI's creation of these water bodies on property owners' land within the permit area obviously affected property owners and under the express, clear, and plain provisions of 10 CSR § 40-6.060(4)(E).5, their consent to such creation was required.

The Commission's reliance upon 10 CSR § 40-3.130(3) to decide otherwise is misplaced. 10 CSR § 40-3.130 establishes "Postmining Land Use Requirements." The general rule is that "[a]ll affected areas shall be restored in a timely manner to either (A) [c]onditions that are capable of supporting the uses which they were capable of supporting before any mining; or (B) [*h*]*igher or better uses* achievable under criteria and procedures of this rule." 10 CSR § 40-3.130(1) (emphasis added). If higher or better uses are contemplated under (B), then 10 CSR § 40-3.130(3) establishes the applicable criteria and procedures under the rule. It provides:

> (3) Criteria for Alternative Postmining Land Uses. *Higher or better uses* may be approved by the regulatory authority as alternative postmining land uses after consultation with the landowner or the land management agency having jurisdiction over the lands, if the proposed uses meet the following criteria:
>
> (A) There is a reasonable likelihood for achievement of the use;
>
> (B) The use does not present any actual or probable hazard to public health or safety, or threat of water diminution or pollution;
>
> (C) The use will not—
>
>> 1. Be impractical or unreasonable;
>>
>> 2. Be inconsistent with applicable land use policies or plans;
>>
>> 3. Involve unreasonable delay in implementation; or

necessarily applies to and seeks to regulate the entire permit area within which prime farmland is located. This logic is reinforced by this section's additional requirements for "[a]ll permit applications for areas in which prime farmland has been identified *within the proposed permit area*" 10 CSR § 40-6.060(4)(C) (emphasis added), and the requirement that Director consult with the state conservationist "[b]efore any permit is used *for areas that include prime farmland.*" 10 CSR § 40-6.060(4)(D).4 (emphasis added).

4. Cause or contribute to violation or federal, state or local law.

10 CSR § 40-3.130(3) (emphasis added).

All of the evidence before the Commission supported that the post-mining uses for property owners' land contemplated under the Original Permit fell under (A)—"uses which [the lands] were capable of supporting before any mining." 10 CSR § 40-3.130(1). There is no evidence in the record before the Commission supporting that the six post-mining water impoundments proposed by AFI in its application for the 2011 Permit Revision fell under (B)— "higher or better uses[.]" *Id.* In that context, 10 CSR § 40-3.130(3) is not applicable to AFI's application for the 2011 Permit Revision. The Commission, therefore, misapplied it in relying upon it as the legal basis for its decision affirming the Program's approval of the 2011 Permit Revision.

Moreover, even if the water impoundments were considered higher or better uses and 10 CSR § 40-3.130(3) was applicable, none of its provisions purport to limit or restrict the special permitting requirements of 10 CSR § 40-6.060(4) for the special category of prime farmland within the permit area, as is the case here. The Commission, therefore, rather than relying upon one regulation and ignoring the other, should have required the Program to comply with both in approving the 2011 Permit Revision. In other words, before approving the 2011 Permit Revision, the Program was required to not only *consult* with property owners about higher or better uses as provided in 10 CSR § 40-3.130(3), but to also obtain property owners' *consent* to the creation of the six water bodies in the nonprime farmland portions of the permit area as required by 10 CSR § 40-6.060(4)(E).5 because of the special situation created by the existence of prime farmland within the permit area.

Because its activities under its application for the 2011 Permit Revision involved prime farmland within the permit area, AFI was brought within the scope of 10 CSR § 40-6.060. The

14

requirements of 10 CSR § 40-6.060(4)(E).5, therefore, were applicable to the 2011 Permit Revision.  It requires that any water bodies be located within the post-reclamation nonprime farmland portions of the permit area, and it also requires that "[t]he creation of any such water bodies must be approved by the regulatory authority *and the consent of all affected property owners within the permit area must be obtained*."  Because the six water impoundments at issue here hold water bodies, their creation on Fowler's and Leist's respective properties within the permit area required their consent.  AFI's application for the 2011 Permit Revision should not have been approved without such consent, and the Commission misapplied the law in upholding the Program's approval of it.  Property owners' third point is granted.

## Decision

The trial court's judgment affirming the Commission's decision upholding the Program's approval of the 2011 Permit Revision is reversed, and the case is remanded.  The trial court is directed to enter a new judgment, consistent with this opinion, reversing the Commission's decision and remanding the case back to the Commission with directions to the Commission to enter a new order, consistent with this opinion, denying AFI's application for the 2011 Permit Revision.

GARY W. LYNCH, J. – Opinion author

NANCY STEFFEN RAHMEYER, J. – concurs

DON E. BURRELL, J. – concurs

15