
| | | |
|---|---|---|
| MO CANN DO, INC., | ) | No. ED110329 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | 20SL-CC05846 |
| | ) | |
| MISSOURI DEPARTMENT OF HEALTH | ) | Honorable Thomas C. Albus |
| AND SENIOR SERVICES, | ) | |
| | ) | |
| Respondent. | ) | Filed: February 28, 2023 |

Kelly C. Broniec, P.J., Philip M. Hess, J., and James M. Dowd, J.

## Introduction

This administrative appeal grapples with Missouri's nascent medical marijuana facility licensing regime. Appellant MO CANN Do, Inc. (MCD) challenges in this appeal the decision by respondent Missouri Department of Health and Senior Services (DHSS) to deny MCD's license application to operate a medical marijuana cultivation facility because MCD's application omitted required information.

The DHSS rejected MCD's *initial* application because it failed to include a certificate of good standing as a corporation issued by the Missouri Secretary of State's office. Then, as required by 19 C.S.R. 30-95.040(1)(B).4, the DHSS issued to MCD a deficiency letter that purported to notify MCD of the information missing from its application and, as required, allowed MCD to revise and resubmit its application. The DHSS's deficiency letter, however, did not specifically notify MCD that its application was missing the certificate of good standing which is one of the documents required by 19 C.S.R. 30-95.040(2). After MCD resubmitted its

application and again failed to include a certificate of good standing, the DHSS denied the application (1) because of the missing certificate, and (2) because the DHSS ranked MCD's application below the cut-off for applications that received one of the sixty licenses made available by 19 C.S.R. 30-95.050.

MCD appealed the denial to the Administrative Hearing Commission (Commission), arguing that it satisfied the minimum licensing standards set out in another section of the medical marijuana regulations, 19 C.S.R. 30-95.025(4)(A), by submitting a certificate of *incorporation* in lieu of a certificate of *good standing*. The Commission disagreed and granted the DHSS's motion for summary decision upon its finding that MCD's missing certificate of good standing was fatal to its license application. The circuit court affirmed the Commission's decision. This appeal follows.

Although MCD brings three points on appeal, its third point is dispositive.[1] That point asserts that the Commission's decision was unauthorized by law because by failing to specify in its deficiency letter that a certificate of good standing was missing, the DHSS failed to adhere to its own regulation and therefore should be equitably estopped from denying MCD's application.

While we disagree that equitable estoppel provides the appropriate remedy for this appeal, we agree that the Commission's decision was unauthorized by law in that the DHSS failed to follow 19 C.S.R. 30-95.040(1)(B).4, its own regulation, when it failed to specify in the deficiency letter that MCD's application was incomplete for lack of a certificate of good standing. Therefore, we reverse and remand. The circuit court is directed to enter judgment

---

[1] MCD also claims: (1) that the decision was not supported by competent and substantial evidence in the record because MCD's application met the minimum standards required for a medical marijuana facility license in that it attached a certificate of incorporation to its application, reflecting its "authorization to do business," as that phrase is used in 19 C.S.R. 30-95.025(4)(A); and (2) that the decision was arbitrary, capricious, and unreasonable because DHSS failed to notify MCD of the missing certificate of good standing in the deficiency letter and therefore DHSS waived the requirement for a certificate of good standing under 19 C.S.R. 30-95.025(2)(A).

2

consistent with this opinion, reversing the Commission's decision and remanding the case back to the Commission with directions to enter a new decision consistent with this opinion in which the DHSS is ordered to grant to MCD a cultivation facility license under 19 C.S.R. 30-95.025(6)(C).

## Background

In November 2018, Missouri voters approved a medical marijuana ballot initiative that amended the Missouri Constitution to legalize the possession and use of marijuana for medical purposes. Respondent DHSS is duly authorized to implement and regulate the state's medical marijuana program. Mo. Const. art. XIV, § 2.4(1)(a)–(b). Consistent with this mandate, the DHSS has promulgated rules and regulations for the licensure of medical marijuana cultivation, manufacturing, and dispensary facilities. In relevant part, license applicants must meet certain minimum standards, including the ability to show the "[a]uthorization to operate as a business in Missouri." 19 C.S.R. 30-95.025(4)(A). These minimum standards "can be met by providing all material required by 19 C.S.R. 30-95.040(2)," the regulation that sets out the requirements for facility license applications. *Id.* This regulation provides, *inter alia*, that "[a]ll applications for facility licenses . . . shall include at least the following information: . . . a certificate of good standing from the Missouri Office of the Secretary of State." 19 C.S.R. 30-95.040(2)(B).

In August 2019, appellant MCD applied to the DHSS for a medical marijuana cultivation facility license. Included in its application was a document titled "CERT-OF-GOOD-STANDING" that was not in substance a certificate of good standing but instead was MCD's certificate of incorporation. The following month, the DHSS rejected the application as incomplete and sent MCD a deficiency letter identifying certain specific missing information.

The deficiency letter was sent pursuant to 19 C.S.R. 30-95.040(1)(B).4 which requires the DHSS to "notify an applicant if an application is incomplete" and "specify in that notification what information is missing." Although the DHSS did not specify in its deficiency letter that

3

MCD's missing certificate of good standing, the letter specified other missing items.[2]  The letter informed MCD that it had seven days to resubmit its application with the missing information and that "any applications with information missing upon [the DHSS's] second review . . . will be considered incomplete and must be denied."

Upon resubmission, MCD's revised application again included the facility's certificate of incorporation, now titled "MCDO0001 Certificate of Good Standing."  On December 26, 2019, the DHSS denied MCD's application (1) for failing to meet the application criteria in 19 C.S.R. 30-95.040(2)(B) due to the missing certificate of good standing and (2) because, pursuant to 19 C.S.R. 30-95.025(4)(C)–(D), after MCD's application was scored and ranked against other applications, MCD's application did not rank high enough to be eligible for one of the sixty available cultivation facility licenses.[3]

MCD appealed the DHSS's denial to the Commission.  In its petition, MCD asserted that a certificate of incorporation is adequate proof of a facility's authorization to do business in Missouri as required by 19 C.S.R. 30-95.025(4)(A).1 and, therefore, despite failing to submit a certificate of good standing, its application met all minimum requirements for licensure.  The DHSS moved for summary decision on the basis that the certificate of good standing is required for a license under 19 C.S.R. 30-95.040(2)(B), that a certificate of good standing and certificate of incorporation are not interchangeable, and that, even under 19 C.S.R. 30-95.025, MCD was not minimally qualified for a license.  On October 29, 2020, the Commission granted its summary decision in favor of the DHSS.

---

[2] The deficiency letter notified MCD that the facility application was rejected for inadequate documentation of Ownership Structure, Proof of Residency, and certain Worksheets & Worksheets Attachments.

[3] Among the other applications scored at that time, MCD's application ranked sixty-second. Later, after the DHSS increased the number of available licenses from sixty to sixty-two as a result of the 2020 census, the DHSS awarded the additional licenses to the sixty-first and sixty-third ranked applicants. MCD was bypassed because of its incomplete application.

In November 2020, MCD petitioned the circuit court for judicial review of the AHC's decision. On May 23, 2022, the court issued its order affirming that decision. MCD appeals.

## Standard of Review

We review the decision of the administrative agency rather than the circuit court's order. Section 536.140.2; *Albanna v. State Bd. of Registration for Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009). In so doing, we must consider "whether the AHC decision was unsupported by competent and substantial evidence based upon a review of the whole record, was unauthorized by law, was arbitrary, capricious, or unreasonable, or involved an abuse of discretion." *St. Charles County Ambulance Dist., Inc. v. Mo. Dep't of Health and Senior Servs.*, 248 S.W.3d 52, 53 (Mo. App. W.D. 2008) (citing section 536.140.2). Questions of law and statutory interpretation are reviewed *de novo*. *Mo. Coal. for the Env't v. Herrmann*, 142 S.W.3d 700, 701 (Mo. banc 2004).

## Discussion

In its third and dispositive point, MCD asserts that the Commission's decision was unauthorized by law because the DHSS failed to notify MCD in the deficiency letter that its application was missing a certificate of good standing. We agree that the Commission's decision upholding the application denial was unauthorized by law because the DHSS ignored the specificity requirements of 19 C.S.R. 30-95.040(1)(B).4, the department's own regulation. However, we deny MCD's contention that, as a result, DHSS is equitably estopped from denying its application. Rather, we find that the DHSS's rejection of MCD's application impermissibly violated its own regulation which it has no authority to do.

"'Rules duly promulgated pursuant to properly delegated authority have the force and effect of law and are binding on the agency adopting them.'" *Fowler Land Co., Inc. v. Mo. Dep't of Nat. Res.*, 460 S.W.3d 502, 507 (Mo. App. S.D. 2015) (quoting *State ex rel. Stewart v. Civil Serv. Comm'n of City of St. Louis*, 120 S.W.3d 279, 287 (Mo. App. E.D. 2009)).

5

Accordingly, "'[o]nce an agency exercises its discretion and creates the procedural rules under which it desires to have its actions judged, the agency denies itself the right to violate those rules.'" *Id.* (internal quotation omitted).

In 2019, the DHSS promulgated 19 C.S.R. 30-95.040 to explain how the agency would exercise its constitutional authority to regulate the operations of medical marijuana facilities. Here, the DHSS established procedural rules for the facility license application process and obligated itself to notify applicants of incomplete applications and "specify" areas of missing information. 19 C.S.R. 30-95.040(1)(B).4. In the present case, the DHSS failed to uphold this obligation to MCD when it did not include in the deficiency letter a specific reference to MCD's missing certificate of good standing. The Commission sought to excuse this error by finding that the DHSS "specifically warned MCD to thoroughly review the rejected application and provide all information required pursuant to 19 C.S.R. 30-95.040 and 19 C.S.R. 30-95.024(4)." But this is not what the regulation requires and, moreover, this ignores the express language of 19 C.S.R. 30-95.040(1)(B).4.

Agency rules are interpreted under the same principles used to interpret statutes, and we "discern the drafters' intent by giving the words used their plain and ordinary meaning." *State ex rel. Stewart*, 120 S.W.3d at 286. In the absence of a regulatory definition, we turn to the dictionary for the plain and ordinary meaning of words. *Id.* The dictionary definition of "specify" is "to mention or name in a specific or explicit manner." WEBSTER'S THIRD NEW INT'L DICTIONARY UNABRIDGED 2187 (3d ed. 2002). Therefore, the use of "specify" in 19 C.S.R. 30-95.040(1)(B).4 imposed on the DHSS the obligation to explicitly reference each item missing from MCD's initial application which would include the missing certificate of good standing. The DHSS cannot be allowed to undermine the express language of its own regulation by simply directing the applicant to the applicable state regulations to rescue it from its failure to be specific. Although "some deference is appropriate when [an] issue involves an agency's

6

interpretation of its own rules . . . [t]his does not mean that the [Commission] has the authority to exercise discretion when a [regulation] is unambiguous or to ignore its own rules." *Matter of Verified Application and Petition of Laclede Gas Co.*, 504 S.W.3d 852, 859 (Mo. App. W.D. 2016) (internal quotation omitted).

The dissenting opinion relies principally on *Frye v. Levy*, 440 S.W.3d 405 (Mo. banc 2014), where the Court applied the rules of statutory construction to determine the legislative intent as to whether a requirement imposed by a statute on a governmental actor should be treated as "mandatory" or simply "directory." *Id.* at 409–411. We find *Frye* readily distinguishable from this case because *Frye* concerned a *statute* and the issue of legislative intent, neither of which is present here. Here, we need not glean legislative intent because we have the DHSS's own *regulations* and the intent expressed within them. The dissent acknowledges that administrative agencies like the DHSS are bound by their own rules and, as the authors of those rules, forfeit the opportunity to ignore them. These issues were not addressed in *Frye*.

Regardless, the manifest intent of 19 C.S.R. 30-95.040(1)(B).4, by requiring the DHSS to issue deficiency letters that specify missing items in an application, is that applications be complete and decided on their merits. The DHSS knew this to be their obligation because they partially complied with the regulation by notifying MCD of three other missing items which MCD corrected in its re-submitted application.[4] Moreover, the determinative impact of the DHSS's mistake appears inescapable given that the record here demonstrates that MCD would have received a license when the number of available licenses was increased from sixty to sixty-two but the DHSS denied it because of its incomplete application.[5]

Point III is granted in part and denied in part.

---

[4] *See supra*, note 2.
[5] *See also* MO. DEP'T OF HEALTH & SENIOR SERVS., *Medical Marijuana Regulatory Program 2021 Annual Report* 22 (2021), https://health.mo.gov/safety/cannabis/pdf/annual-mmrp-report-governor-py21.pdf.

## Conclusion

The circuit court's order affirming the AHC's decision is reversed and the case is remanded. The circuit court is directed to enter judgment consistent with this opinion, reversing the AHC's decision and remanding the case to the AHC with directions to enter a new decision consistent with this opinion in which the DHSS is ordered to grant to MCD a cultivation facility license under 19 C.S.R. 30-95.025(6)(C).

_____
James M. Dowd, Judge

Philip M. Hess, J. concurs and
Kelly C. Broniec, P.J., dissents in a separate opinion

8



# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| MO CANN DO, INC., | ) | No. ED110329 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | 20SL-CC05846 |
| | ) | |
| MISSOURI DEPARTMENT OF HEALTH | ) | Honorable Thomas C. Albus |
| AND SENIOR SERVICES, | ) | |
| | ) | |
| Respondent. | ) | Filed: February 28, 2023 |

## DISSENT

The majority's holding that DHSS violated 19 C.S.R. 30-95.040(1)(B).4, and thus, is precluded from denying MCD's application on the basis of the missing certificate of good standing is premised on the general principle that rules promulgated by an agency "have the force and effect of law and are binding on the agency adopting them." *Fowler Land Co., Inc. v. Mo. Dept. of Nat. Res.*, 460 S.W.3d 502, 507 (Mo. App. S.D. 2015) (quoting *State ex rel. Stewart v. Civil Serv. Comm'n of City of St. Louis*, 120 S.W.3d 279, 287 (Mo. App. E.D. 2003)). The majority's holding is also premised on the general principle that, "[o]nce an agency exercises its discretion and creates the procedural rules under which it desires to have its actions judged, the agency denies itself the right to violate those rules." *Id.* (quoting *State ex rel. Stewart*, 120 S.W.3d at 287); *State ex rel. Martin-Erb v. Mo. Comm'n on Human Rights*, 77 S.W.3d 600, 608 n.6 (Mo. banc 2002)). While I agree with these principles of law and their general application

here[1], I respectfully dissent because I believe the issue of whether DHSS has the authority to deny MCD's application on this basis does <u>not</u> turn on the simple question of whether DHSS must follow its own regulations—I certainly agree that it must do so. Rather, I believe the question of DHSS's authority to approve or deny MCD's application turns on whether DHSS, in enacting 19 C.S.R. 30-95.040(1)(B).4, intended to waive its authority to deny an application in the event its deficiency notice fails to specify a non-compliant or missing document.[2] Because I do not believe DHSS intended such a consequence in enacting this notice provision, I would affirm the circuit court's order, which affirmed the Commission's summary decision in favor of DHSS.

As Missouri Supreme Court Judge Paul C. Wilson aptly and succinctly stated in *Frye v. Levy*, 440 S.W.3d 405, 408 (Mo. banc 2014), "'[s]hall' means 'shall,'" and this word "unambiguously indicates a command or mandate." In this case, 19 C.S.R. 30-95.040(1)(B).4 plainly states that DHSS "will notify" an applicant if their application is incomplete and "will specify" the missing information. However, even if we assume that these words unambiguously indicate *commands* or *mandates* to DHSS, I do not believe that should end our analysis, as the majority opinion suggests. Rather, consistent with *Frye* and other applicable cases, I believe our analysis must go further.

In *Frye*, a mother challenged the jurisdiction of the Children's Division of the Department of Social Services (the "Division") to investigate a complaint of child neglect. *Id*. at 406. Section 210.152.2[3] required the Division to complete its investigation and issue a

---

[1] I also agree with the majority opinion that agency rules are interpreted under the same principles used to interpret statutes, and that we "discern the drafters' intent by giving the words used their plain and ordinary meaning." *State ex rel. Stewart v. Civil Serv. Comm'n of City of St. Louis*, 120 S.W.3d 279, 286 (Mo. App. E.D. 2003).
[2] DHSS provided MCD with a deficiency notice that listed other missing items, but failed to list the certificate of good standing.
[3] All statutory references are to RSMo Supp.2005.

determination within 90 days of receiving the complaint. *Id*. However, the Division did <u>not</u> complete its investigation within 90 days, but nonetheless issued a determination that the complaint had been substantiated by a preponderance of the evidence. *Id*. at 406-07. The mother appealed, arguing that the Division lost its jurisdiction to investigate and issue a determination because it did not comply with the mandatory directive of § 210.152.2. *Id*. at 407. Although *Frye* acknowledged the statute's use of the word "shall" meant that the Division had a "clear and unequivocal" duty to complete its investigation and notify the mother of its determination within 90 days of receiving the complaint, that did not end the inquiry. *Id*. at 408. Rather, *Frye* noted that, "the central issue in this case is not whether 'shall' means 'shall' but what sanction (if any) the legislature intended to apply when the Division fails to do what [§] 210.152.2 says it 'shall' do." *Id*.

In addressing this issue, *Frye* discussed the important distinction between statutes that are "mandatory" in nature versus those that are merely "directory." *Id*. In analyzing § 210.152.2, *Frye* noted that if the legislature had intended for the Division "to be stripped of all authority to investigate or make a determination regarding a hotline complaint after the 90th day, then [§] 210.152.2 is a 'mandatory statute' and this intention will be enforced." *Id*. Conversely, "if the legislature has not approved this sanction or otherwise indicated that this is the intended consequence of the Division's non-compliance in a given case, then the statute is a 'directory statute' and the trial court was wrong in creating this sanction on its own." *Id*. In answering this question, *Frye* stated the following general rule: "When the legislature imposes a deadline or other mandate, this Court has held that courts have no authority to impose a sanction for non-compliance when the legislature has chosen not to do so." *Id*. (citing *Farmers & Merchants Bank & Trust Co. v. Dir. of Revenue*, 896 S.W.2d 30, 33 (Mo. banc 1995)). *Frye* then discussed

3

several additional cases addressing this general rule, and further explained: "***If*** [statutes are] ***mandatory***, in addition to requiring the doing of the things specified, ***they prescribe the result that will follow*** if they are not done; ***if directory, their terms are limited to what is required to be done***." *Id*. at 409 (emphasis in original) (quoting *Hudgins v. Mooresville Consol. Sch. Dist.*, 278 S.W. 769, 770 (Mo. 1925)).

With this framework established, *Frye* recognized that although § 210.152.2 "imposes an obligation on the Children's Division to complete its investigation and to make its determination within 90 days of receiving a hotline complaint[,]" the statute "does not explicitly provide that the Division may only investigate or determine hotline complaints before the 90th day, nor does it explicitly provide that the Division lacks authority to investigate or determine such complaints after the 90th day." *Id*. at 410. Therefore, *Frye* specifically recognized that, "[i]n the absence of such legislative intent, courts have no authority to impose such a sanction on their own." *Id*.

However, this did not conclude the analysis in *Frye*, as our Supreme Court further noted that "[t]he lack of statutory approval for a sanction in the event of non-compliance with a statutory obligation, or the lack of any language permitting only acts that are in compliance with that obligation, is an important factor in drawing the important 'mandatory' or 'directory' distinction." *Id*. Specifically, *Frye* recognized that although this factor was dispositive in *Farmers* and several other similar cases, it is <u>not</u> the *only* factor. *Id*. (citing *Bauer v. Transitional Sch. Dist. of City of St. Louis*, 111 S.W.3d 405 (Mo. banc 2003)). *Frye* also cited *Sw. Bell Tel. Co. v. Mahn*, 766 S.W.2d 443, 446 (Mo. banc 1989), which recognized that the "absence of a penalty provision does not automatically override other considerations." *Id*. "Ultimately, whether a statute is mandatory or directory is a 'function of context and legislative intent.'" *Id*. at 410-11 (quoting *Bauer*, 111 S.W.3d at 408 (citing *Farmers*, 896 S.W.2d at 32)). *Frye* then

4

noted that "nothing in [§] 210.152.2, or elsewhere in chapter 210, states that the Children's Division may only investigate or determine hotline complaints before the 90th day or that the Division loses its authority to continue an investigation or make a determination regarding a hotline complaint when the 90-day deadline has come and gone." *Id*. at 411. After additional analysis, including recognizing the societal importance of investigating child abuse and neglect complaints, *Frye* ultimately concluded that the Division did <u>not</u> lose jurisdiction, noting:

> [T]he choice of what sanction (if any) to apply when the Children's Division fails to comply with the 90-day deadline in [§] 210.152.2 does not belong to the courts any more than it is up to the courts whether to impose a deadline to begin with. Both choices belong exclusively to the legislature.

*Id*. at 414.

Using the *Frye* analysis[4] to determine if the regulation at issue here is mandatory or directory, I first address the lack of a sanction in the event of non-compliance. It is clear that DHSS did not specify any sanction or other consequence for its failure to notify an applicant of a non-compliant or missing item in an application when it promulgated 19 C.S.R. 30-95.040(1)(B).4. Therefore, this strongly indicates that this regulation is directory in nature. However, this does not end our inquiry. We must also consider the "context and legislative intent" of DHSS in promulgating this regulation.

Several other provisions of DHSS's own regulations governing the license application process clearly demonstrate that it knew how to draft a sanction for an applicant's failure to provide a complete application after being notified of a missing item. For example, 19 C.S.R. 30-95.040(1)(F).3 provides: "If an applicant fails to provide a complete application within seven (7) days of being notified that an application is incomplete, ***the license or certification for which the applicant is applying <u>will be denied</u>.***" (emphasis added). Likewise, 19 C.S.R. 30-

---

[4] I use the *Frye* analysis because, as the majority and I agree, agency rules are interpreted under the same principles used to interpret statutes. *State ex rel. Stewart*, 120 S.W.3d at 286.

5

95.040(1)(F).6 provides: "If an application does not meet the minimum standards for licenses and certifications pursuant to 19 C.S.R 30-95.025(4), *the license or certification for which the applicant is applying __will be denied.__*" (emphasis added).

In addition, DHSS's regulations governing the issuance of "qualifying patient identification cards" further illustrate that DHSS clearly knew how to draft a mandatory directive, with sanctions, for itself. Specifically, 19 C.S.R. 30-95.030(3)(A) provides: "Upon receiving an application for a qualifying patient identification card, primary caregiver card, or patient cultivation identification card, the department shall, within (30) days, either approve the application or provide a written explanation for its denial." More to the point, sub-division .1 of this sub-section provides:

> In the case of qualifying patient and patient cultivation identification cards, if the department fails to deny or fails to approve an application within thirty (30) days, a card will be issued that will be valid for one (1) year and will serve all the same functions as would a card issued after application approval.

Thus, sub-division .1 provides that if DHSS fails to approve or deny an application for a qualifying patient and patient cultivation identification card within the prescribed thirty days, it loses the authority to deny the application and must issue the card. Accordingly, if DHSS had intended to waive its authority to deny a deficient application for its failure to follow the notice provision of 19 C.S.R. 30-95.040(1)(B).4, it certainly could have done so by adding plain language to that effect.

Furthermore, the notice requirement of 19 C.S.R. 30-95.040(1)(B).4 does not use the word "shall," but rather, uses the phrases "will notify" and "will specify" in its attempt to provide a directive. There is no dispute that the word "shall" "unambiguously indicates a command or mandate." *Frye*, 440 S.W.3d at 408; *see also State ex rel. City of Blue Springs v. Rice*, 853 S.W.2d 918, 920 (Mo. banc 1993). However, the word "will" should __not__ necessarily

6

be afforded the same construction. *See Nelson v. Crane*, 187 S.W.3d 868, 870 (Mo. banc 2006) ("When different statutory terms are used in different subsections of a statute, appellate courts presume that the legislature intended the terms to have different meaning and effect."). DHSS used the word "shall" in numerous other provisions of Chapter 95 governing the medical marijuana regulation program, including, most notably, 19 C.S.R. 30-95.030(3)(A), which governs the time frame for granting or denying an application for a "qualifying patient identification card" and other similar cards. Therefore, given the well-established mandatory nature of the word "shall," it would be reasonable to ascribe a different, even if slight, meaning to the word "will," as used in 19 C.S.R. 30-95.040(1)(B).4. However, even if we ascribed a mandatory meaning to the phrases "will notify" and "will specify," I believe the omission of a sanction or any other consequence and the "context and legislative intent" of the entire regulation conclusively indicates DHSS's intent in promulgating this regulation, and thus, is fatal to MCD's argument that DHSS was precluded from denying its application on the basis of the missing certificate of good standing, notwithstanding DHSS's failure to specify the certificate of good standing in the deficiency notice.[5]

---

[5] There is no dispute DHSS provided a deficiency notice to MCD; however, DHSS did not inform MCD that its filing of a certificate of incorporation was not sufficient to satisfy the certificate of good standing requirement. Therefore, I do not believe that DHSS disregarded its own regulation, 19 C.S.R. 30-95.040(1)(B).4. When MCD submitted its initial application, it mislabeled the *certificate of incorporation* it submitted, labeling it as follows: "CERT-OF-GOOD-STANDING." In addition, when MCD submitted its revised application after receiving the deficiency notice from DHSS, it once again submitted its *certificate of incorporation*, but labeled it as follows: "MCD0001 Certificate of Good Standing." Therefore, I believe MCD bears at least some responsibility for DHSS's failure to specify in the deficiency notice that the certificate of good standing was missing. Furthermore, the deficiency letter contained a generic notice directing MCD "[to] thoroughly review the application and provide all information required pursuant to 19 CSR 30.95.040 and 19 CSR 30-95.025(4) upon submission." I believe this generic notice is further evidence of a common thread bolstering my position that DHSS, in promulgating this regulation, did not intend to waive its authority to deny an application when an applicant files a non-compliant document or in the event DHSS neglects to identify every omitted item. While MCD argues the complexities of submitting this application as an excuse for its erroneous filing, it was the entity applying for the privilege to receive this coveted license. While MCD had only its own application to review for compliance, DHSS had well over 60 such applications to process. However, even if MCD had wholly failed to submit anything to satisfy the certificate of good standing requirement and DHSS still failed to notify MCD of the missing item, this would not affect how I would dispose of this case.

7

I also do not find anything else in Chapter 95 of DHSS's medical marijuana regulations that suggests it intended to waive its authority to deny an incomplete application for failure to follow the notice provision. In fact, even a cursory review of this Chapter indicates quite the opposite—DHSS takes very seriously its role as a gatekeeper for those seeking a license to participate in the highly-regulated medical marijuana industry in Missouri. While there is no dispute that being awarded one of these highly-coveted licenses is an extremely lucrative proposition, it is also true that this brings great responsibility, given the nature of the controlled substance involved, as well as the undeniable fact that there is a substantial market for licensed marijuana in Missouri. Therefore, in my view, it stands to reason that DHSS would not want to waive its authority to deny an application simply because it failed to identify one non-compliant or missing item from a lengthy application, even an item seemingly as trivial as a certificate of good standing. *See also Countryclub Homes, LLC v. Mo. Dept. of Natural Res.*, 591 S.W.3d 882, 891-92 (Mo. App. W.D. 2019) (holding that a statute establishing a 180-day time frame for the Clean Water Commission to issue a decision on an aggrieved party's appeal of a decision of the Department of Natural Resources was directory, and not mandatory, because the statute did not provide an explicit sanction for missing the deadline and the legislature included consequences elsewhere in the statutory permit process scheme for the failure to follow other time deadlines).

For these reasons, I would find that 19 C.S.R. 30-95.040(1)(B).4 is merely directory, and not mandatory, in nature. Accordingly, I do <u>not</u> believe a court, including this Court, may impose such a sanction in the absence of a clear expression of intent from DHSS.

I respectfully dissent from the majority opinion and would affirm the circuit court's order, which affirmed the Commission's summary decision in favor of DHSS.[6]

_____
Kelly C. Broniec, Presiding Judge

_____

[6] My proposed disposition of MCD's third point on appeal would require me to address MCD's other two points on appeal, which I would also deny. Thus, I would still affirm the circuit court's order. However, I need not address the other two points in detail, as doing so would be dicta given the majority's disposition of Point III.